GLADYS DE CASTRO DE GUZMÁN, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada; EZEQUIEL AVILÉS MÉNDEZ, obrero lesionado.

Núm. 442.—*Sometido:* Junio 1, 1951. *Resuelto:* Junio 18, 1951.

---

*César A. Montilla,* abogado de la recurrente; el obrero lesionado no compareció.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Amparándose en lo provisto por el artículo 15 de la Ley núm. 45 de 1935 (págs. 251, 293), según fué enmendado por la Ley núm. 162 de 14 de mayo de 1943 (págs. 525, 555), Ezequiel Avilés Méndez acudió ante la Comisión Industrial de Puerto Rico en 19 de septiembre de 1950 con una petición de compensación en la que alegó en síntesis que el 13 de agosto de dicho año sufrió un accidente del trabajo en San Juan mientras trabajaba para la patrona Gladys de Castro de Guzmán. El accidente consistió, según alegaba, en un fuerte golpe recibido por él en la mano y antebrazo izquierdos al caerse de un camión que cargaba de zahorra. El mismo día la Comisión dictó resolución ordenando al Administrador del Fondo del Seguro del Estado que proveyera a Avilés Méndez tratamiento adecuado, de ser necesario, y que dicha resolución fuese notificada a la patrona para que ésta dentro del término de diez días radicara la alegación que tuviese a bien. Dentro del término concedídole compareció por escrito la recurrente ante la Comisión y alegó que ella explota y opera un negocio de salón de belleza en la planta baja de un edificio de su propiedad situado en la calle de la Cruz núm. 252, de San Juan; que el día indicado utilizó accidental y casualmente los servicios de un camión perteneciénte a Juan Matos, a fin de que se removiera y transportara de la segunda planta del edificio cierta madera vieja que allí había; que los servicios de ese vehículo y su conductor, así como los de los dos ayudantes, entre los cuales estaba Avilés Méndez, fueron contratados por ella por con-

ducto de uno de sus empleados regulares, a fin de que aquéllos realizaran única y exclusivamente la labor de transportación de la madera durante el día, labor para la cual se convino y se pagó la suma de $8 a Juan Matos por el uso del camión y de $2 a cada uno de los indicados ayudantes; que la labor de Avilés Méndez fué de carácter accidente y casual, habiendo trabajado para ella sola y exclusivamente en dicho día, sin que antes ni después hubiera sido empleado regular suyo, ni en el negocio de salón de belleza, ni en ningún otro negocio; que la labor realizada por Avilés Méndez no está comprendida dentro del negocio o industria de ella; y que dicho obrero fué contratado para realizar determinada labor por precio alzado, que le fuera oportunamente satisfecho; y negó que se dedicara a la explotación de un negocio de transporte, a la construcción de obra o a cualquier otro negocio que no fuera el ya indicado.

Llamado el caso para vista pública ante la Comisión el día 15 de enero de 1951, comparecieron las partes y por conducto de sus respectivos abogados estipularon:

"

"5. Que la segunda y tercera plantas de este edificio se dedican únicamente a residencias privadas.

"6. Que en ocasión de desocuparse esta segunda planta, la patrona hizo remover por su empleado regular Gracimiano Santiago unos escombros y maderas viejas, los cuales se amontonaron en un lugar de esta segunda planta. Que la patrona ordenó a su empleado Gracimiano Santiago que obtuviera los servicios de algún *truck* para el domingo día 13 de agosto de 1950 trasladar estos escombros de esta segunda planta y disponer de ellos para botarlos.

"7. Gracimiano Santiago contrató a Juan Matos para que ese domingo llevara un truck y se llevara esos escombros, conviniendo en la suma de ocho (8) dólares por ese trabajó.

"8. Que Juan Matos trajo dos ayudantes llamados Benicio Ayala y Ezequiel Avilés, y que ese día domingo por la mañana estos tres señores, Juan Matos, Benicio Ayala y Ezequiel Avilés, removieron esas maderas y esos escombros, pagándosele a Be-

nicio Ayala dos (2) dólares por su trabajo, y a Ezequiel Avilés dos (2) dólares por su trabajo ese día.

"9. Que Ezequiel Avilés nunca había trabajado con la patrona, ni con anterioridad ni con posterioridad al domingo día 13 de agosto de 1950.

"10. Se acepta que el domingo día 13 de agosto de 1950 el obrero sufrió un accidente o una caída mientras realizaba el trabajo para el cual había sido contratado.

"11. Que la patrona no se dedica ni se dedicaba, en la fecha del accidente, al negocio de transporte o a la construcción de obras, específicamente en la segunda planta de dicho inmueble, y que no tiene ningún otro negocio que no sea el de 'Beauty Parlor,' establecido en la primera planta de dicho inmueble, y la academia o escuela, que también está en dicha primera planta.

".    .    .    .    .    .    ."

En 23 de enero siguiente la Comisión dictó extensa resolución en la cual hizo constar, entre otras cosas, que "es indudable que este accidente no está relacionado en sí con el negocio que la patrona tiene establecido en la planta baja de su edificio, pero sí ocurrió en el negocio o empresa de alquiler o arrendamiento que la patrona tenía establecido en las otras plantas del mismo edificio, y en relación con este negocio, no podemos considerar el empleo de este obrero, en el momento en que se lesionó, como uno simplemente accidental o casual para excluirlo del derecho a compensación a tenor de lo dispuesto en el artículo 38 de la Ley sobre Accidentes del Trabajo". Terminó la Comisión diciendo que ".  .  . entendemos que en este caso el obrero recibió su lesión en el curso y como consecuencia de uno de los negocios que la patrona explota en su edificio.  .  . por lo que la patrona estaba obligada a asegurarse con el Fondo del Estado contra estos accidentes, y no lo hizo .  .  ." Ordenó, por tanto, al Administrador que procediera a liquidar el caso de acuerdo con la ley y que cobrara a la patrona, una vez liquidado el mismo, el importe de la compensación que pudiera corresponderle al obrero por dicho accidente, así como los

gastos administrativos en que se hubiera incurrido en el caso. Solicitada reconsideración oportunamente, la misma fué declarada sin lugar.

Para revisar la resolución así dictada, en 5 de marzo pasado libramos un auto de revisión. La recurrente funda su recurso principalmente en dos conclusiones de hechos que a su juicio no están sostenidas por la estipulación sometida por las partes en ocasión de la vista celebrada y sin que exista, a su juicio, evidencia legal y competente que las sostenga, a saber: (a) que la patrona en este caso dedicaba a residencias privadas la segunda y tercera plantas del inmueble en que ocurrió el accidente: y (b) que la patrona operaba o tenía establecido un negocio o empresa de alquiler o arrendamiento en la segunda y tercera plantas del edificio en cuestión.

▮▮▮ Provee en lo esencial el artículo 38 de la Ley 45, supra, que:

"Se entiende por 'obrero' o 'empleado' toda persona al servicio de cualquier individuo, sociedad o corporación que emplee *regularmente* obreros comprendidos bajo las disposiciones de esta Ley; *Disponiéndose,* que *se excluyen expresamente* los obreros y empleados dedicados al servicio doméstico *y aquéllos cuya labor sea de un carácter accidental o casual y no esté comprendida dentro del negocio, industria, profesión u ocupación,* aquéllos que trabajan en sus domicilios, y los de patronos exentos de las obligaciones de esta Ley." (Bastardillas nuestras.)

No basta, pues, según el contexto claro de la ley, que la labor realizada por el obrero lesionado sea meramente una de carácter accidental o casual para que el accidente no esté cubierto por la Ley de Compensaciones por Accidentes del Trabajo. Para ello es necesario no sólo que la labor sea de carácter accidental o casual, sino también que la misma "no esté comprendida dentro del negocio, industria, profesión u ocupación" del patrono. Ese artículo usa la conjunción copulativa "y" y no la disyuntiva "o". De ahí que la concurrencia de ambos requisitos sean esenciales para que el accidente caiga dentro de la excepción. Ésa es la interpretación

que damos a nuestro estatuto y ésa es también la interpretación que se ha dado en el continente a estatutos idénticos al nuestro.    Véanse *Sherlock* v. *Sherlock*, 201 N.W. 645; *Lackey* v. *Industrial Commission*, 249 Pac. 662; *Gardner* v. *Trustees of Main Street, etc.*, 250 N.W. 740; *Hoshiko* v. *Industrial Commission*, 266 Pac. 1114; *Sears, Roebuck & Co.* v. *Pixler*, 192 So. 617; *J.P.O. Sandwich Shop* v. *Papadopoulos*, 13 N.E. 2d 869; *Colosimo* v. *Giacomo*, 273 N.W. 632; *Holden* v. *Beebe Fuel Co.*, 21 N.E.2d 874; *Bates* v. *Nelson*, 38 N.W.2d 631; *Amundsen* v. *Poppe*, 34 N.W.2d 337.

En el recurso de autos no hay lugar a dudas que la labor que Avilés Méndez realizaba al sufrir el accidente era una de carácter accidental o casual.    No obstante, como según la estipulación la segunda y tercera plantas del referido edificio se dedican a residencias privadas, es menester determinar si el dedicar esos pisos a tal cosa equivale a la explotación de un negocio o industria.    De no equivaler a ello, el caso caería dentro de una de las excepciones especificadas en la sección 38. [1]

Un caso que guarda íntima similitud con el presente lo es el de *Sommerville* v. *Industrial Commission*, 196 P.2d 718, resuelto por la Corte Suprema del Estado de Utah en 3 de agosto de 1948.    Según se desprende de la opinión en él emitida, la demandada Ina Cook era dueña y explotaba una cafetería, y era dueña a la vez de un edificio situado como a una milla de distancia, el cual tenía cedido en arrendamiento. Necesitando reparaciones el edificio, la señora Cook empleó al demandante y a otro individuo para hacer éstas.    Mientras se efectuaban las reparaciones un pequeño pedazo de metal lesionó al demandante en un ojo, iniciándose entonces la correspondiente acción.    El estatuto de Utah está concebido en forma idéntica al nuestro y su Corte Suprema resolvió que si bien era cierto que la propiedad en que el deman-

---

[1] En este caso no se ha suscitado la cuestión de si Juan Matos, dueño del camión, era o no un contratista independiente.    Tampoco la de si la patrona empleaba, al momento del accidente, menos de tres obreros.

dante trabajaba al momento del accidente estaba alquilada, nada había en los autos que indicara que la señora Cook dedicara parte sustancial de su tiempo a la administración o explotación de esa propiedad, decidiendo asimismo que tal arrendamiento no era parte de su ocupación o negocio, dentro del significado del estatuto. En apoyo de su conclusión citó innumerables casos. Continuó diciendo aquella Corte que no debe interpretarse que resuelve que el poseer y explotar bienes inmuebles para fines de arrendamiento no puede en determinados casos constituir un negocio dentro del contexto de la Ley de Compensaciones por Accidentes del Trabajo; y que su resolución se limita a los hechos del caso, a saber: que cuando una persona es dueña de un inmueble que cede en arrendamiento a inquilinos, mas no dedica personalmente o a través de un agente parte sustancial de su tiempo a la explotación o administración de tal propiedad, semejante cesión no constituye un negocio dentro del contexto de la ley. Véanse también *Kaplan* v. *Gaskill*, 187 N.W. 943; *La Grande Laundry Co.* v. *Pillsbury*, 161 Pac. 988; *Sink* v. *Pharaoh*, 212 N.W. 192; *Setter* v. *Wilson*, 37 P.2d 50; *Jackson* v. *Cathcart & Maxfield*, 277 N.W. 22; *Ford* v. *Industrial Accident Commission*, 200 Pac. 667; *Lauzier* v. *Industrial Accident Commission*, 185 Pac. 870; Anotación en 50 A.L.R. 1176 *et seq.*, y la obra Schneider's, *Workmen's Compensation*, Vol. 2, Edición Permanente, pág. 104. Estamos de acuerdo con el criterio arriba enunciado y resolvemos que aún aceptando que el apartado quinto de la estipulación pueda interpretarse en el sentido de que la peticionaria se dedicaba a ceder en arrendamiento la segunda y tercera plantas de su edificio, ello no equivale a la explotación de un negocio dentro del significado y alcance del artículo 38, supra. Tampoco podría decirse que ello constituye una industria, profesión u ocupación. En su consecuencia, siendo la labor realizada por el obrero en este caso de carácter accidental o casual y no estando comprendida esa labor dentro del negocio,

industria, profesión u ocupación de la recurrente, el accidente no es uno comprendido por la referida Ley de Compensaciones por Accidentes del Trabajo.

*Debe revocarse la resolución recurrida y desestimarse la petición radicada por el obrero.*

El Juez Asociado Sr. Snyder está conforme con el resultado.