MANUEL A. BUSTELO, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., JUAN ORTEGA BURGOS, lesionado, recurridos.

*Número:* 567    *Resuelto:* 1 de junio de 1962

*César J. Dones Magaz,* abogado del recurrente.

Sala integrada por el Juez Asociado señor Belaval como Presidente de Sala y los Jueces Asociados señores Hernández Matos y Santana Becerra.

El Juez Asociado Señor Hernández Matos emitió la opinión del Tribunal.

Juan Ortega Burgos, obrero dedicado a la limpieza y arreglo de jardines en la zona metropolitana, presentó el 28 de enero de 1959 una petición de compensación, bajo juramento, ante la Comisión Industrial de Puerto Rico, alegando, en síntesis, que el 24 de ese mismo mes sufrió un accidente del trabajo en Santurce, mientras trabajaba como jardinero para el patrono Manuel A. Bustelo; que se hirió con el machete; que devengaba en ese trabajo $12.00 mensuales; que él era el único obrero que empleaba su patrono y que éste no estaba asegurado a la fecha del accidente y que como consecuencia de tal accidente había sufrido lesiones que lo habían inhabilitado para el trabajo, suplicando que se condenara a su patrono "al pago de la compensación que proceda."

Contestó Bustelo admitiendo la ocurrencia del accidente, pero negó que Ortega trabajara en el momento del accidente como obrero suyo y otros extremos de la petición; alegó como defensas (a) que el peticionario le rindió servicios como un contratista independiente; (b) que el lesionado era un "free lancer", que trabajaba "por circunstancias de ocasión y azar", libre de compromisos que le sometieran al control del patrono, excepto en lo referente al resultado final de su labor, por lo

que no estaba protegido por la Ley de Compensación por Accidentes del Trabajo; (c) que al enmendarse esa ley para hacer compulsorio el seguro obrero, sin importar el número de empleados, no fue su intención obligar a todos los ciudadanos que empleasen esta clase de obrero a asegurarse porque constituiría la ley una fuente de enriquecimiento injusto para el Fondo del Seguro del Estado; (d) que mantenía, precisamente, una póliza con la Iowa National Mutual Ins. Co., "para estos casos en que no resulta de aplicación la ley . . ." y (e) que la labor que realizaba el lesionado era de carácter casual.

El 9 de marzo siguiente se celebró una vista pública en la que prestaron testimonio el obrero y su patrono Manuel A. Bustelo. El 20 de abril de 1959 la Comisión Industrial dictó resolución determinando que en la fecha del accidente el obrero Juan Ortega Burgos realizaba las labores de jardinero para el patrono Manuel A. Bustelo; que la labor que realizaba era una regular y no de carácter casual o accidental y que el accidente era compensable de acuerdo con el Artículo 2 de la Ley Núm. 45 de 18 de abril de 1935, ordenando al Administrador del Fondo del Seguro del Estado que determinara la compensación que correspondía pagarse al peticionario en el caso, y que la misma se cobrara al patrono no asegurado con arreglo al Art. 15 de esa ley.

De esa resolución solicitó el patrono reconsideración que le fue denegada. Para revisarla nos presentó, en tiempo, una petición. Ordenamos que se remitiera el expediente para su revisión. El recurso fue sometido por las partes para decisión final, siendo el único error señalado por el patrono el siguiente:

"La Resolución en cuestión es ultra-vires, ilegal y arbitraria por haber declarado compensable, fuera de los términos de la Ley de Compensación por Accidentes del Trabajo y en exceso de la jurisdicción que ésta concede a la Comisión Industrial, un accidente que no es legalmente compensable bajo dicho estatuto,

todo debido a que la prueba del caso, como cuestión de derecho, deja de apoyar a la referida Resolución a virtud de que dicha evidencia omite de establecer, la relación de obrero y patrono que es esencia misma del 'hecho del empleo', y sobre cuya presencia únicamente es en que pueda basarse la aplicación de esta ley como tal."

Creemos necesario exponer los antecedentes de hecho en este recurso en la forma en que resultan relatados en Resolución de la Comisión Industrial. Ésta hace un completo y fiel extracto de las declaraciones de ambos testigos por lo que a continuación insertamos la parte pertinente de dicha resolución:

"El obrero sustancialmente declaró que trabajaba con el Sr. Bustelo el día 24 de enero de 1959, y que como a las tres de la tarde de este día, después de haber desyerbado el jardín, y mientras cortaba unas amapolas, se hirió con el machete. Que él trabajaba en el arreglo del jardín dos veces al mes, y recibía $12.00 y que este trabajo lo realizaba bajo la dirección y responsabilidad del patrono.

"A preguntas del Lcdo. Dones el testigo contesta que se dedica a trabajar en la agricultura; que en las mismas condiciones que trabajaba con el Lcdo. Bustelo, trabajaba con otras personas en el arreglo de jardines, excepto los días lunes y viernes que trabaja en la Y.M.C.A.

"Continúa declarando a preguntas del abogado del patrono que entre las personas para quien trabaja como jardinero, se encuentran el Sr. Raúl Buxeda, con quien gana $10 por un día de labor, el Sr. Bueno, el fiscal Méndez y don Juan Rodríguez. Que a veces gana $40 a la semana trabajando para todas estas personas.

"Que el primer día que trabajó con el Lcdo. Bustelo fue uno en que él estaba en casa de un señor de nombre don Agustín, y que una sirvienta de este último le dijo que en la casa del Lcdo. Bustelo querían hablar con él. Que él contrató el trabajo que iba a hacer con los esposos Bustelo y que a veces, cuando no le pagaba la señora le pagaba el Sr. Bustelo; que fue éste quien lo mandó a cortar las amapolas. Que él trabajaba en el jardín de las residencias de las personas que ha mencionado, porque lo llaman a trabajar.

"Que él hace arreglo con las personas para quienes trabaja a razón de un precio determinado, ya dos veces al mes, pero que si termina su labor en día y medio, siempre recibe paga completa. Que siempre hace el trabajo a gusto y bajo la supervisión de los dueños de la residencia, o sea, que hace el trabajo como ellos lo quieran.

"Que siempre acostumbra empezar su labor a las 7:00 de la mañana, aunque no tiene horario fijo de entrada y salida. Que si se da el caso que los señores de la casa tengan que salir, él continúa trabajando, puesto que sabe lo que tiene que hacer, pero que siempre se hace bajo la dirección y gusto de los dueños. Que a veces, cuando el trabajo le queda bonito, recibe hasta propinas. Que cuando termina de arreglar un jardín antes del tiempo convenido, siempre llama a sus patronos para requerirles si hay que hacer algo adicional.

"Continúa contestando preguntas del abogado del patrono y manifiesta que él no trabaja por su cuenta, como lo haría un contratista que puede alquilar peones. Que él es un pobre alquilado. Añade que él no está obligado a trabajar ni con el Lcdo. Bustelo ni con ninguno de los demás que ha mencionado, pero que él hace sus propios arreglos para atender los diferentes jardines en distintos días del mes. Que él posee sus propias herramientas, pero que también en algunas casas tienen aperos de jardinería. Que se ha dado el caso que en la casa en que ha estado trabajando han necesitado lavar un automóvil, sacar el perro y botar la basura, y él lo ha hecho. Que botar la basura y yerbas del jardín es parte de su trabajo; que hasta hace mandados al colmado, pero que esos mandados nunca los ha hecho en la casa del Lcdo. Bustelo. Que él no está obligado a trabajar en ninguna de las casas, puesto que si los dueños desean sustituirlo con otro, lo pueden hacer pues no hay ningún contrato firmado.

"Que cuando él llega a una residencia donde ha hecho arreglos para limpiar el jardín, si la yerba no ha crecido y el jardín se ve limpio, pues no trabaja. Se va a otro sitio, pero siempre cumple con presentarse debido al arreglo previo que ha hecho con los dueños de la casa, pero que si éstos han llamado a otro jardinero y cuando él va lo encuentra trabajando, pues lo que hace es retirarse a otro de los sitios donde trabaja.

"A preguntas del ponente el obrero contesta que hace más de cuatro años trabaja en la zona donde vive el Lcdo. Bustelo,

y con este último, hace más de un año que le arregla el jardín dos veces al mes.

"Continúa declarando el obrero a preguntas del Lcdo. Dones que el año pasado los esposos Bustelo estaban en Boston, pero que ellos le alquilaron la casa a una americana y que él siguió trabajándole a ella; que cuando los esposos Bustelo regresaron, continuó arreglándoles el jardín.

"El Sr. Manuel A. Bustelo declaró dedicarse a la profesión de abogado y que no tiene ningún otro negocio; que posee una casa en la calle Majagua de Punta Las Marías; que la relación que existía entre él y el querellante comenzó cuando éste fue a su casa y preguntó si podía arreglar el jardín. Que este obrero trabajaba en otras residencias de la zona, durante distintos días. Que cuando el obrero le preguntó si podía arreglar el jardín, él le contestó que no había inconveniente ninguno y que podía comenzar el trabajo. Que le dijo que lo que había que hacer era cortar la grama, las amapolas, y algunas ramas de los árboles de la parte de atrás. Que el obrero primeramente le pidió $15.00, pero que luego arreglaron por tarea, $12.00. Que la labor la realizaba a veces, un día o dos al mes; que tanto él como su esposa trabajaban fuera, porque ella es su secretaria; que el obrero se quedaba solo arreglando el jardín, pero que antes ellos le daban instrucciones de lo que se iba a hacer porque saben que el obrero es un jardinero diestro. Que estuviera bien o mal hecho el trabajo, siempre le pagaban los $12.00 convenidos; que en ocasiones en que él no se aparecía, utilizaban otro jardinero; que ni el obrero tenía obligación con él ni él con el obrero, puesto que el trabajo se realizaba por ajuste. Que esa ha sido la relación que ha habido entre él, su esposa y el reclamante.

"Añade el Lcdo. Bustelo que el obrero no tenía horario fijo de trabajo; que él acepta que no tenía póliza de seguro obrero debido a que no tenía servicio doméstico en su hogar, pero que tenía y tiene una póliza de una compañía aseguradora que cubre riesgos de cualquier persona que esté en su casa trabajando y le ocurra algo; que esta póliza cubre cualquier cosa que le ocurra a una persona que esté de visita en su casa, siempre y cuando esos accidentes no se compensen por el Fondo del Estado. Que la convicción que tiene de este asunto como abogado y como persona particular, es que la labor que realizaba el obrero no estaba comprendida dentro del ámbito del Fondo del Estado, y por esa razón no tenía póliza alguna con dicha Institución, porque

lo mismo le cuesta la póliza particular que tiene que lo que le cuesta la póliza con el Fondo del Seguro del Estado.

"Continúa declarando el Lcdo. Bustelo que cuando el obrero sufrió el accidente fue atendido inmediatamente por su suegro, el Dr. Morales, quien le prestó la primera ayuda; que el testigo también lo llevó al hospital; que alrededor de las nueve de la noche fue a verlo, le llevó comida y habló con varias personas allí para que lo atendieran, y alrededor de las doce de la noche fue que vinieron a operarlo, a pesar del testigo haber hablado con los médicos. Que posteriormente llamó al obrero para que viniera a hablar con el Inspector del Seguro de la casa aseguradora con la que tenía la póliza; que hasta ese momento el testigo no estaba enterado de que el obrero se había querellado ante el Fondo del Estado. Que él notificó a la compañía aseguradora para que investigaran la forma en que el accidente había ocurrido, de manera que el obrero pudiera radicar su reclamación. Termina informando el Lcdo. Bustelo que entre él y el obrero no existía compromiso de clase alguna."

No fue cometido el error señalado por el patrono recurrente. Concurren en el caso todos los supuestos legales para que el mismo sea compensable. La decisión de la Comisión Industrial enfoca y fundamenta muy certeramente la conclusión de compensable del accidente; en ella se hace un cuidadoso análisis de la frase "labor de carácter accidental o casual", fundado en el texto del estatuto, en nuestra jurisprudencia, en la doctrina continental y en su propio criterio.

Después de distinguir el caso de *De Castro* v. *Comisión Industrial*, 72 D.P.R. 666 (1951), se expresa en parte así:

"De una lectura del Artículo 38, transcrito en una parte de esta resolución, nuestra ley exceptúa de la protección de ella 'aquellos obreros cuya labor sea de carácter casual o accidental y no esté comprendida dentro del negocio, industria, profesión u ocupación.' Exige, pues, la concurrencia de dos requisitos, a saber: en cuanto al obrero, que la labor no sea accidental o casual; y con respecto a la labor, que ésta no se halle comprendida dentro del negocio, industria, etc., etc., del patrono. Examinando la jurisprudencia de California, cuya ley contiene un díctum idéntico al nuestro sobre el punto que nos ocupa, el tra-

tadista Hannold en su obra 'Workmen's Compensation', tomo 1ro., Sección 64, dice como sigue:

'To relieve the employer from liability under the California Act, the employment must be "both casual and not in the usual course of the trade, business, profession or occupation of the employer" It is the course of the business, not the nature of the employment, which is required to be usual. It follows that the fact that the cause requiring the employment is unusual and extraordinary does not prevent the employment from being in the usual course of the employer's business.'

"Ambas condiciones tendrían que concurrir para excluir el caso.

"La Comisión Industrial hasta la fecha no ha determinado por reglamento, como prescribe el Artículo 38 de la ley, lo que se entiende por 'carácter accidental o casual', por lo que debemos recurrir a la jurisprudencia para determinar en cada caso particular si se trata del empleo incidental o casual a que se refiere la Ley. 57:278.

"La palabra 'casual', tal como se usa comúnmente, significa algo que sucede sin regularidad, que es ocasional o incidental, esto es, todo lo opuesto a lo que es regular, sistemático, periódico y seguro; In re Gaynor, 247 Mass. 86, 104 N.E. 339, R.A. 196 A. 363.

"El contrato de servicio es lo que debe analizarse para determinar si el empleo es casual. Ordinariamente un empleo es casual si es por un solo día o por una hora, pero no cuando se emplea un obrero para hacer una parte de un trabajo que se hace con cierta regularidad y en la expectación de que se continúe haciendo por un tiempo razonable; Sabella v. Brazeileiro, 86 N.J. Law 505, 91 Atl. 1032; 87 N.J. Law, 710, 94 Atl. 1103.

"No hace casual un empleo el hecho de que no se realice por un período de tiempo especificado o que la lesión ocurriera pocas horas después del empleado haber empezado el trabajo; In re Bridget McAuliffe, Vo. 1, No. 7, Bul. Ohio Indus. Comm. P. 144.

"Si el trabajo se realiza periódicamente en el transcurso del negocio, ocupación o industria de un patrono por tiempo definido, como por una semana o por un mes, el empleo no es casual, como tampoco es casual, porque sólo tome una parte del tiempo del

obrero si esto ocurre repetidas veces en el curso de los negocios; Thompson v. Twiss, 90 Conn. 444, 97 Atl. 328.

"En nuestra opinión, la Comisión Industrial debe determinar por reglamento qué es o qué se entiende por trabajo casual, ya que nuestra ley ha sido enmendada en su Artículo 2, en el sentido de que la misma será aplicable a todo patrono que emplee uno o más obreros o empleados.

"A nuestro juicio, entendemos por trabajo casual aquel no caracterizado por regularidad de acción, o que fuere, por su naturaleza, trabajo imprevisto o de emergencia, y en todos los casos, cuando el mismo es de breve duración y su estipendio es mínimo, y no esté comprendido dentro del negocio, industria, profesión u ocupación del patrono.

"La Ley 45 de abril 18 de 1935, según ha sido subsiguientemente enmendada, es similar en su Artículo 2, a la de muchos Estados de los Estados Unidos, y, para excluir a un obrero de los beneficios de la ley, es esencial que él sea uno cuyo empleo sea ambas cosas; casual y también que no esté en el curso de o para el propósito de la industria o negocio del patrono, y si el empleo no fue casual, es inmaterial si estaba para el propósito de la industria o negocio del patrono. *Gardner* v. *Trustees of Main St., M. E. Church of Ottunwa.* (Iowa) 250 N.W. 740; o si el empleo está en el curso de o para propósito de la industria o negocio, es inmaterial si fue causal. *Hoshiko* v. *Industrial Commission of Colorado,* 266 P. 1114, 83 Colo. 556; *Lackey* v. *Industrial Comm.,* 249 P. 662, 80 Colo. 112; pero si el empleo es casual y no está en el curso usual del negocio u ocupación del patrono, no está dentro de la ley. La Grande Laundry Co. v. Pillsbury, 161 P. 988, 173 Cal. 777.

"Del conjunto de todas las pruebas, tenemos que llegar a la conclusión que el obrero Juan Ortega Burgos, para la fecha de su accidente, 24 de enero de 1959, realizaba las labores de jardinero para el patrono Manuel A. Bustelo; que la labor que realizaba el obrero lesionado era una labor regular, que no era de carácter casual o accidental." ■

En ese sentido creemos que muy poco debemos añadir. En el reciente caso de *Arraiza Iglesia* v. *Comisión Industrial,* 85 D.P.R. 14 (1962), llegamos a la conclusión de que el accidente del trabajo allí envuelto no era compensable porque la labor que realizaba el obrero constituía un trabajo acciden-

tal o casual y no estaba comprendido dentro del negocio, industria, profesión u ocupación del alegado patrono. Entonces dejamos abierta para futura consideración, la cuestión de si la labor era casual cuando el patrono y el empleado tenían un acuerdo expreso o tácito que se ha extendido por un período considerable de tiempo para que el empleado realice determinada labor durante ciertos períodos definidos. ▆

Hubo un acuerdo entre Bustelo y Ortega para que éste arreglara y limpiara el jardín de la residencia del patrono; para la época del accidente ese acuerdo se había extendido por más de un año; lo usual era que Ortega fuera a arreglarlo dos veces al mes; recibió todo ese tiempo el precio preconvenido de $12.00 mensuales. Esta periodicidad, continuidad y recurrencia del trabajo elimina las características de accidental o casual. De la existencia de estas condiciones es que depende la compensabilidad del accidente cuando la labor realizada no se encuentra dentro de la profesión, negocio, industria u ocupación del patrono. Véanse: *Aleckson* v. *Kennedy Motors Sales Co.*, 55 N.W.2d 696, 701 (Minn. 1952); *McCabe* v. *Shanahan & Son*, 24 A.2d 16 (Pa. 1942); *Ludwig* v. *Kirby*, 80 A.2d 239 (N. J. 1951); *Billmayer* v. *Sanford*, 177 Minn. 465, 467, 225 N.W. 426, 427. ▆

No es posible considerar al jardinero Ortega—quien dijo que era "un pobre alquilado" y a quien su patrono y la esposa de éste "le daban instrucciones de lo que iba a hacer"—como un contratista independiente. En *Atiles, Admor.* v. *Comisión Industrial*, 63 D.P.R. 597, 601, (1944), dijimos que "la ley al referirse al contratista independiente, se refiere siempre a aquel que contrate un trabajo y emplee obreros para realizarlo." ▆

Por otro lado, Ortega fue contratado por un amo de casa, que no perseguía con ello fin de lucro, mediante un sueldo mensual, para realizar la labor manual de arreglar dos veces al mes, el jardín de su hogar. Su trabajo llevaba a la familia que allí moraba, el placer y la satisfacción que ofrece

todo jardín bien cultivado y atendido. En esas condiciones en todas las ocasiones en que se encontraba en su labor de jardinero en la casa de Bustelo, era un empleado dedicado al servicio doméstico de esa casa, aun cuando se albergara fuera de ella, al igual que los demás sirvientes y criados de su hogar, dentro del amplio o lato sentido del término "servicio doméstico." Véanse: *Jack* v. *Belin's Estate*, 27 A.2d 455, 457 (Pa. Sup. 1942); *Anderson* v. *Ueland*, 197 Minn. 518 (1936) 267 N.W. 517, 518; Schneider's *Workmen's Compensation*, Vol. 2, 3rd Ed., Sec. 627, y Suplemento de 1958, Vol. 1, pág. 498.

La ley, sin distinción alguna, ofrece protección en sus Arts. 2 y 38 a los empleados domésticos. La ofrecía a la fecha del accidente. Siendo de "carácter remedial", como se expresa en el segundo párrafo de su Art. 2, debe interpretarse liberalmente y de modo que su misión protectora cubra al mayor número de trabajadores lesionados y nunca en el sentido de limitar ese número más allá de las limitaciones expresas determinadas en la propia ley.

Finalmente, insistiendo en la observación que hicimos en el citado caso de *Arraiza*, al efecto de que la Comisión Industrial no ha hecho el reglamento ordenado por la Ley definiendo lo que constituye un trabajo accidental o casual, deseamos agregar que después de la enmienda de 1957, en que se eliminó el requisito del empleo de tres o más obreros y la exclusión anterior del servicio doméstico, estando prácticamente todos los ciudadanos sujetos a asegurarse bajo la Ley, es de mayor imperativo el que se adopte ese reglamento en beneficio de asegurados y de obreros de modo que tanto unos como otros tengan una norma por anticipado de las situaciones que puedan constituir el trabajo accidental o casual.

*Debe confirmarse la resolución recurrida.*