## Vaughn v. McFadden

*George H. Detweiler*, for claimant.
*Saul, Ewing, Remick & Saul*, for defendant.

OLIVER, P. J., March 23, 1939. — The action of the Workmen's Compensation Board in setting aside the referee's award of compensation, from which this appeal is taken, presents only one question for our consideration. All the referee's findings of fact were sustained. The decision of the board rested solely on its determination that claimant's employment with defendant had amounted to "domestic service" within the meaning of section 304 of The Workmen's Compensation Act of June 2, 1915, P. L.

736, as amended by the Act of June 4, 1937, P. L. 1552, which excepts from the term "employe," for purposes of The Workmen's Compensation Act, all who are engaged in "domestic services performed in a private home". The correctness of this conclusion is now challenged by claimant.

The nature of claimant's employment was stated briefly as follows by the referee in his first finding of fact: "That on August 6, 1936, and for some time prior thereto, claimant was an employe of defendant, in the capacity of a companion, at average weekly wages of $18.46." This finding sheds little light on the nature of claimant's duties. From the testimony it appears that they were at best only vaguely defined. It appears that claimant first came to defendant in response to an advertisement offering a position to a retired registered nurse and that, in applying for the position, claimant stated to defendant that she was a trained nurse. Claimant's statement as to her duties was as follows:

". . . all she wanted was somebody to be a companion, to go out with her when she wanted to go out and things of that kind and just be there if she wanted me for anything. There really were no duties."

Defendant's version was a little more specific: "I told her her duties would be to clean her room and make her bed, to give me a hypodermic whenever I wanted it but I think I said once a week, but if the doctor wanted it nine or ten times, she would have had to give it. She was to take out the little white dog. When the maid went away she was to take care of the little white dog. She was to go out with me when I went shopping up and down the avenue or to the dressmaker and she was to do anything she wanted to do and as much as possible to keep out of my way. I said, 'I work in the garden, if you would like to do that as recreation you can.' Those were her duties."

Defendant has for many years been a nervous invalid. It is evident from the testimony that her principal reason for employing claimant was the mental reassurance

which she would derive from knowing that claimant, a person with some medical experience, would always be within easy call in case she was needed. The duties were light, perhaps almost nonexistent. But it is clear that claimant was employed to become a part of defendant's household establishment and to fill a place therein for which defendant felt there was a need. Whether this rather unique type of employment constituted domestic service or not is not something which we are called upon to decide in the abstract. All that we need here consider is whether or not this type of employment falls within the class of employments which the legislature intended to exclude from the operation of The Workmen's Compensation Act, supra.

The Workmen's Compensation Act was passed primarily for the benefit of the great army of business and industrial workers, for whom the common-law remedy, which had arisen out of the conditions surrounding the small shop and the use of simple machinery or no machinery at all, seemed to have become inadequate. See Carville v. A. F. Bornot & Co., 288 Pa. 104 (1927), and 71 C. J. 243. Its motivating philosophy was that the loss arising from accidents in industry should not be borne in such heavy proportions by the employe, and that these losses should be added to the cost of production, the same as losses sustained in the destruction or deterioration of machinery. See 1 Skinner on Pennsylvania Workmen's Compensation Law 13. Accordingly, the legislature did not find it necessary to include all classes of employes within the scope of the act in order to accomplish its purposes. Partly for this reason, and partly for reasons of administrative convenience, persons engaged in domestic services performed in a private home have been excluded from the operation of the act. This background should be borne in mind in considering the meaning of the term "domestic services."

That the type of employment with which we are here concerned falls within the meaning of the phrase "do-

mestic services," as employed in the act, would seem to admit of but little doubt. If the term "domestic" is to be taken as opposed to "business" and "industrial", certainly claimant's services were "domestic". This type of employment is of a personal and intimate character and is not the kind in which a large number of employes would be employed by a single employer. In De Kaverninsky v. Stotesbury et al., 19 D. & C. 411, 413 (1933), the question arose as to whether a night watchman on defendant's palatial estate performed "domestic services". The court reasoned as follows:

"His service was as conducive to his employer's sense of security and well-being as was the service of the butler. His duties were as personal and intimate as were the duties of the cook, chambermaid, or waitress. His employment related solely to his employer's home and household. In the common and usual sense, he was engaged in domestic service." Every word of this is applicable with equal force in the present case, despite the obvious differences between the respective types of employment involved.

Claimant's contention seems to be based upon a feeling that one who occupies the rather dignified position of a "personal attendant" cannot be regarded as a "domestic servant", and that the latter term is appropriate only to a performer of menial duties, a member of what might be termed the "servant class". But The Workmen's Compensation Act is not concerned with such nice social distinctions. In fact the word "servant" is not even used in the act. It can hardly be contended that claimant was not employed to render "services". The inquiry therefore is only as to whether those services were "domestic". "Domestic" is defined in 3 Century Dictionary as "relating or belonging to the home or household, or to household affairs; pertaining to one's place of residence, or to the affairs which concern it, or used in the conduct of such affairs."

An English court, considering the term in quite a different connection, employed what seems to us a fairly sensible definition of a "domestic servant".

"When one speaks of articles of domestic use and ornament, one means articles of household use and ornament, and in like manner a 'domestic servant' is, in my opinion, a household servant as distinguished from an outdoor servant": In re Lawson, 110 L. T. Rep. (n. s.) 573, 574 (1914).

That case involved the interpretation of a clause in a will leaving certain property to "my domestic servants". The court there held that both a companion-housekeeper, who was entrusted with general supervision over the other servants, and a male nurse and attendant, who ate his meals in the household, but did not sleep there, were properly embraced within the terms of the bequest. Neither of these servants was a menial or a member of the same social stratum as the cooks and chambermaids of the household, but it seems to us that the court was quite correct in deciding that they were nonetheless "domestic servants".

In this State it has already been ruled that a governess or child's nurse is a domestic servant within the meaning of The Workmen's Compensation Act: Prescott v. Fisher et al., 43 Montg. 237 (1927). There would seem to be little important difference, for purposes of the present inquiry, between one who is hired as companion to a child and one who is hired as companion to an adult. There may be minute social distinctions between the two types of service, but, if there are, they are not pertinent to the instant problem.

We, therefore, hold that claimant, at the time of her injury, was engaged in "domestic service performed in a private home" within the meaning of section 304 of The Workmen's Compensation Act, as amended, and that, consequently, she was not an employe within the provisions of that act.

*Order*

And now, March 23, 1939, claimant's exceptions to the order of the Workmen's Compensation Board setting aside the referee's award of compensation are severally overruled, and the appeal is dismissed. Judgment is hereby entered in favor of defendant and against claimant.