Jack, Appellant *v.* Belin's Estate et al.

Argued March 3, 1942.

Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Z. R. Bialkowski,* of *Bialkowski, Bialkowski & Bialkowski,* for appellant.

532

*James W. Scanlon,* for appellee.

OPINION BY HIRT, J., July 23, 1942:

On August 15, 1939, claimant was injured when he fell from a ladder while removing whitewash from the roof of a green house where he was employed. He was permanently disabled by the injury. Both the referee and the board disallowed compensation on the ground that claimant was a domestic servant and as such was not entitled to compensation because of the Act of June 21, 1939, P. L. 565, 77 PS §1a, which provides that the Compensation Act shall not 'apply to or in any way affect any person who at the time of injury is engaged in domestic service or agriculture.' The lower court affirmed. There is ample testimony to support the findings of fact as to the nature of claimant's employment and the conclusion that claimant was not an employee within the definition of the act.

Claimant's employment began in 1927 when he was hired by Paul B. Belin, the owner of a large country estate of about 60 acres. Belin had built a large mansion house as a home for himself and his family and had developed the grounds in keeping with it. The entire estate was operated as appurtenant to the mansion house, for their maintenance, comfort and pleasure. Paul B. Belin died in 1930. Thereafter, his widow continued to occupy the mansion house and the land, under his will, which gave her the life use of the whole property, with remainder to two sons. The land comprising the estate, thereafter, was managed by defendant testamentary trustees who paid claimant his wages. Henry Belin, a son, one of the residuary devisees lived with his family in a house which he had built, by agreement with the trustees, on the premises. The other son lived about one mile from the estate. After the death of their father the property was operated as a whole, entirely for the benefit of the widow and the families of the sons, and their servants. There

were several small houses on the property, occupied by claimant and other servants, who were employed as caretakers. There were 15 acres of flower gardens, shrubbery and landscaping and a large greenhouse. Fruit and vegetables were grown. Milk and butter were produced on the premises.

Claimant considered himself a gardener and there was no change in the nature of his employment after the death of Paul B. Belin. He, however, had duties other than gardening. Every morning he delivered milk and, at times, butter and eggs or produce raised on the estate, by means of a farm truck, to the mansion house and to the homes of the sons and to the families of the workmen who lived on the estate. On occasion he hauled top soil for the gardens, groceries and other supplies from Scranton and feed for the cattle. His principal duty, however, was to operate the greenhouse where he raised plants which he later transferred to the flower beds. He also grew flowers for cutting and delivered a daily supply to the mansion house and to the sons' homes. On rare occasions, excess stock from the barn was sold, but the conduct of the estate was not a commercial enterprise in any of its phases. It was operated solely for the benefit of the widow and the sons and, incidentally, for the maintenance of servants and employees and their families, who lived and worked on the estate.

The question, here raised, involves a construction of the above act of assembly to determine its scope and intent. In a strict sense a domestic servant is one who resides in the same house with the master whom he serves (Bouvier); one who lives in the family of another as a hired household assistant; a house servant, 19 C. J. 389; 1 Blackstone 328. But, in its broader meaning, 'domestic' also includes services 'pertaining to one's house or home, or one's household or family; relating to home life.' (Webster).

The coupling of domestic servants with agricultural

workers, in the same act, is significant. Agricultural workers are those who are engaged in an enterprise conducted by the employer for his profit. House servants merely contribute to the personal needs and comfort of the employer. Between the two groups are the outservants, who in strictness do not fall within either class. And yet there is much better reason for excluding gardeners, caretakers and the like, than agricultural workers, for they are not engaged in commercial enterprise and their services all relate to the home life. Our conclusion, in construing the act, is that the place where the services are performed does not determine the nature of the employment. Cooks and house maids are domestic servants, not because they work indoors, but because they serve the needs of the household. Similarly, one who drives an automobile in bringing supplies from market or in disposing of waste materials or who raises vegetables and produce for use on the estate is a domestic servant in the broader sense contemplated by the act. Growing flowers for the delight and pleasure of the family of the owners is the same kind of service. Where, as here, the grounds, though extensive, are maintained as the curtilage to the mansion house and for the comfort and pleasure of the occupants, they who thus minister to the needs of the owners, according to the standard of living established by them, are domestic servants within the purview of the act.

.The precise question here involved has not been before our appellate courts. In *Anderson v. Ueland,* 197 Minn. 518, 267 N. W. 517, however, in construing a similar provision of a Compensation Act, it was held that 'domestic servants' included a gardener or caretaker whose activities were directed toward the care and maintenance of the home. See also, *Eicholz v. Shaft,* 166 Minn. 339, 208 N. W. 18.

We think it clear that 'domestic service' was intended to include services such as were rendered by claimant. Though totally, and perhaps permanently, disabled by

a most unfortunate accident, he is excluded from all benefits under the Compensation Act.

Judgment affirmed.