MANUEL A. BUSTELO, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., JUAN ORTEGA BURGOS, Injured, Respondents.

No. 567.     Decided June 1, 1962.

*César J. Dones Magaz* for petitioner.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

Juan Ortega Burgos, a workman engaged in cleaning and tending gardens in the metropolitan zone, filed on January 28, 1959 a sworn claim for compensation with the Industrial Commission of Puerto Rico alleging, briefly, that on the 24th day of that month he sustained a labor accident in Santurce while working as a gardener for employer Manuel A. Bustelo; that he injured himself with the machete; that he earned in that employment $12 a month; that he was the only workman employed by his employer and that the latter was not insured at the time of the accident; and that as a result of such accident he had sustained injuries which disabled him for work, praying that his employer be ordered "to pay him the proper compensation."

Bustelo answered admitting the occurrence of the accident, but he denied that Ortega was his workman at that time and other particulars of the claim. He alleged as defenses (a) that the petitioner rendered services to him as an independent contractor; (b) that the injured workman was a "free lance," that he worked "for one occasion and chance," without any agreement which would subject him to the control of the employer except as to the final result of the work, wherefore he was not covered by the Workmen's Accident Compensation Act; (c) that when that Act was amended in order to make compulsory labor insurance, regardless of the number of employees, the intention was not to compel all

citizens employing that type of workman to take out insurance, since that Act would constitute a source of unjust enrichment of the State Insurance Fund; (d) that he carried precisely a policy with the Iowa National Mutual Ins. Co. "for these cases in which the Act does not apply . . ."; and (e) that the work performed by the injured was of a casual character.

A public hearing was held the following March 9 at which the workman and his employer Manuel A. Bustelo testified. On April 20, 1959 the Industrial Commission entered a decision ruling that on the date of the accident workman Juan Ortega Burgos was performing the work of a gardener for employer Manuel A. Bustelo; that the work which he performed was regular and not casual or incidental, and that the accident was compensable under § 2 of Act No. 45 of April 18, 1935 (Sess. Laws, p. 250), ordering the Manager of the State Insurance Fund to determine the compensation payable to the petitioner in the case and to collect the same from the uninsured employer pursuant to § 15 of the Act.

The employer moved for reconsideration of that ruling, which was denied. He filed in this Court in due time a petition for review. We ordered that the record be sent up for review. The parties submitted the petition for final decision, the only error assigned by the employer being the following:

"The decision in question is ultra vires, illegal, and arbitrary, in having declared compensable, outside the terms of the Workmen's Accident Compensation Act and in excess of the jurisdiction conferred by the latter to the Industrial Commission, an accident which is not legally compensable under that Act, on the ground that the evidence in the case, as a matter of law, does not support the said decision because it fails to establish the labor-management relationship which is the very essence of the 'fact of the employment' on which the application of this Act may rest only."

It is necessary, in our opinion, to review the historical facts of this appeal as they are set out in the decision of the

Industrial Commission. The Commission makes a complete and true summary of the testimony of both witnesses, wherefore we copy below the pertinent part of that decision:

"The workman testified substantially that he was working for Mr. Bustelo on January 24, 1959, and that around 3:00 p.m. of that day, after weeding the garden and while he was pruning some hibiscus, he wounded himself with the machete. That he trimmed the garden twice a month for which he received $12, and that he performed this work under the direction and responsibility of the employer.

"Upon questioning by Mr. Dones, the witness answered that he is engaged in agriculture; that he performed for other persons and under the same conditions the same type of work of trimming the garden which he performed for Mr. Bustelo, except Monday and Friday when he worked in the Y.M.C.A.

"Upon questioning by the employer's attorney, he further testified that among the persons for whom he works as a gardener is Raúl Buxeda, who pays him $10 a day, Mr. Bueno, district attorney Méndez, and Mr. Juan Rodríguez. That sometimes he earns $40 a week working for all these persons.

"That the first day he worked for Mr. Bustelo was on the occasion when he was in the house of a man named Don Agustín, and that a servant of the latter told him that they wanted to talk to him at the house of Mr. Bustelo. That he agreed with the Bustelo spouses on the work he was going to do, and that some times when the lady did not pay him Mr. Bustelo did; that the latter was the one who told him to prune the hibiscus. That he works in the gardens of the homes he has mentioned because he is asked to work.

"That he makes arrangements for a fixed price with the persons for whom he works, perhaps twice a month, but if he finishes the work in one day and a half he always receives full pay. That he always enjoys his work under the supervision of the owners of the residence, that is, that he does the work the way they want it.

"That he always starts to work at 7:00 a.m., although he has no fixed hours. That if the owners of the house wish to go out, he continues to work because he knows what he has to do, but that it is always done under the direction of the owners and at their pleasure. That sometimes they even tip him when the work is nicely done. That when he finishes trim-

ming a garden before the agreed time, he always calls his employers and asks them if they want anything else.

"He continues answering questions by the employer's attorney and says that he does not work on his own account as would a contractor who hires peones. That he is a poor hireling. He adds that he is under no obligation to work either for Mr. Bustelo or for any of the other persons whom he has mentioned, but that he makes his own arrangements to tend the different gardens on different days of the month. That he owns his own tools, but that in some houses they also have gardening tools. That on some occasions in which he has been working in a house it has been necessary to wash the car, to take the dog out, and to dispose of the garbage, and that he has done it. That the disposal of the garbage and weeds from the garden is part of his work; that he even makes errands to the grocery store, but that he has never made any errands in Mr. Bustelo's house. That he is under no obligation to work in any of the houses, because if the owners wish to put someone else in his place they are at liberty to do so because there is no signed contract.

"That when he arrives at a home where he has made arrangements to clean the garden and finds that the grass is not tall and that the garden is clean, he does not work. He goes somewhere else, but he always comes because he has made previous arrangements with the owners of the house; but that if the latter have hired another gardener and he finds him working, he goes to one of the other places where he works.

"Upon being examined by the Commissioner, the workman answered that he has worked for more than four years in the area where Mr. Bustelo lives, and that he has worked for the latter for more than one year tending the garden twice a month.

"Upon questioning by Mr. Dones, the workman further testified that last year the Bustelo spouses went to Boston and rented their house to an American lady and that he continued to work for her; that when the Bustelo spouses returned he continued tending their garden.

"Manuel A. Bustelo testified that he is a lawyer by profession and that he has no other business; that he owns a house on Majagua Street of Punta Las Marías; that the relationship existing between him and the complainant commenced when the latter went to his house and asked if he could condition the garden. That this workman worked in other

residences of that area on different days. That when the workman asked him if he could condition the garden, he answered that there was no objection and that he could start to work. That he told him that his work consisted in clipping the grass, pruning the hibiscus and some branches of the trees in the back yard. That at first the workman asked him $15, but that later they settled for $12 for the job. That he performed the work once or twice a month; that both he and his wife go out to work because she is his secretary; that the workman stayed alone conditioning the garden, but that they first gave him instructions on what he was supposed to do because they know that the workman is an expert gardener. That they always paid him the $12 agreed upon whether or not the job was well done; that they hired another gardener whenever he did not report for work; that the workman was under no obligation to him nor he to the workman because the work was done for a fixed price. That that was the relation existing between him, his wife, and the claimant.

"Mr. Bustelo added that the workman had no fixed hours; that he admits that he did not carry a labor insurance policy because he did not have domestic servants, but that he carried and still carries a policy with an insurance company covering the risks of any person working in his house to whom anything may happen; that this policy covers anything that may happen to a guest in his house, provided such accidents are not compensated by the State Fund. That his conviction of this matter as a lawyer and private individual is that the work performed by the workman was not comprised within the ambit of the State Fund, and that for that reason he did not carry any policy with that institution because his private policy costs him as much as the policy of the State Insurance Fund.

"Mr. Bustelo further testified that when the workman sustained the accident he was given immediate assistance by his father in law, Dr. Morales, who gave him first aid; that the witness also took him to the hospital; that he went to see him about 9:00 p.m., brought food to him and talked there to several persons to look after him, and that it was not until about 12 midnight that they operated on him despite the fact that he had talked with the doctors. That thereafter he asked the workman to come and talk with the insurance inspector of the insurance company with which he carried the policy; that he did not learn until that moment that the workman had

complained to the State Fund. That he notified the insurance company to investigate the accident so that the workman could file his claim. Lastly, Mr. Bustelo informed that there was no agreement of any kind between him and the workman."

The error assigned by the petitioning employer was not committed. All the legal assumptions rendering the case compensable are present. The decision of the Industrial Commission concluding that the accident is compensable is wisely focused and grounded. It makes a careful analysis of the phrase "work of an accidental or casual nature" based on the text of the statute, on our decisions, on the American doctrine, and on its own criterion.

After distinguishing the case of *De Castro* v. *Industrial Commission*, 72 P.R.R. 622 (1951), it says in part as follows:

"From a reading of § 38, copied somewhere else in this decision, our Act excepts from its protection 'workmen . . . whose work is casual and is not included in the business, industry, profession or occupation.' It therefore requires the concurrence of two requisites, to wit: as respects the workman, that the work be not casual; and as respects the work, that it not be included in the business, industry, etc., of the employer. From an examination of the California authorities, whose law contains a dictum identical with ours on the matter under consideration, textwriter HANNOLD in 1 Workmen's Compensation, § 64, states as follows:

"'To relieve the employer from liability under the California Act, the employment must be "both casual and not in the usual course of the trade, business, profession or occupation of the employer." It is the course of the business, not the nature of the employment, which is required to be usual. It follows that the fact that the cause requiring the employment is unusual and extraordinary does not prevent the employment from being in the usual course of the employer's business.'

"Both requirements would have to concur in order to exclude the case.

"Up to the present time the Industrial Commission has not determined by regulation, as prescribed by section 38 of the

Act, what is to be understood by 'incidental or casual character'; hence we must resort to the adjudicated cases in order to determine in each instance whether an incidental or casual employment to which the law refers is involved. 57:269.

"The term 'casual,' in common use signifies something which comes without regularity and is occasional and incidental, as opposed to regular, systematic, periodic, and certain. *In re Gaynor*, 217 Mass. 86, 104 N.E. 339, L.R.A. 1916A, 363.

"It is necessary to analyze the contract of employment in order to determine whether the employment is casual. Ordinarily an employment is casual if it is for one single day or by the hour, but not when a workman is hired to do part of the work which is performed with certain regularity and in the expectation that it would continue for a reasonable period. *Sabella* v. *Brazileiro*, 86 N.J. Law 505, 91 Atl. 1032, 87 N.J. Law 710, 94 Atl. 1103.

"An employment is not casual by the fact that it is not performed for a specified period of time, or that the injury was sustained a few hours after the employee started to work. *In re Bridget McAuliffe*, Vol. 1, No. 7, Bul. Ohio Indus. Comm. 144.

"If the work is performed periodically in the course of the employer's business, occupation, or industry for a definite time, as for a week or a month, it is not a casual employment, nor is it casual, if it be for a part of the workman's time at regularly recurring periods of time in the course of business. *Thompson* v. *Twiss*, 90 Conn. 444, 97 Atl. 328.

"In our opinion, the Industrial Commission should determine by regulation what is or what is meant by casual employment, since § 2 of our Act has been amended in the sense that it shall apply to every employer employing one or more workmen or employees.

"In our judgment, casual employment means employment which does not come with regularity, or which is, by its nature, unforeseen or emergency employment, and in all cases when it is of short duration and the pay is limited and is not included within the employer's business, industry, profession, or trade.

"Section 2 of Act No. 45 of April 18, 1935, as subsequently amended, is similar to that of many States of the Union, and in order to except a workman from its benefits it is essential that he be one whose employment is both things: casual and also not occurring in the course of or for the purpose of the

employer's trade or business; and it is immaterial whether the employment was not casual for the purpose of the employer's trade or business, *Gardner* v. *Trustees of Main St. M. E. Church of Ottumwa,* 250 N.W. 740 (Iowa); or if the employment occurred in the course of or for the purpose of the industry or business, it is immaterial whether it was casual. *Hoshiko* v. *Industrial Commission of Colorado,* 266 Pac. 1114, 83 Colo. 556; *Lackey* v. *Industrial Comm.,* 249 Pac. 662, 80 Colo. 112; but if the employment is casual and not in the usual course of the employer's business or occupation, it is not included within the Act. *La Grande Laundry Co.* v. *Pillsbury,* 161 Pac. 988, 173 Cal. 777.

"From the evidence as a whole we must conclude that on the date of the accident, January 24, 1959, workman Juan Ortega Burgos was performing the work of gardener for employer Manuel A. Bustelo; that the work which the injured workman was performing was a regular work, the character of which was not casual or incidental."

█ In that sense, we believe that there is very little we can add. In the recent case of *Arraiza* v. *Industrial Commision, ante,* p. 13, we concluded that the labor accident therein involved was not compensable because the work which the workman performed was incidental or casual and was not included in the alleged employer's business, industry, profession, or occupation. We then left open for future consideration the question whether the employment was casual whenever the employer and the employee have an express or implied understanding which has extended over a considerable period of time in order that the employee may perform a particular job during certain definite periods.

██ Bustelo and Ortega came to an agreement for the latter to clean and tend the garden of the employer's residence; at the time of the accident that arrangement had extended for over one year; Ortega usually went twice a month to do that work; during all that time he received the price of $12 already agreed upon. This periodicity, continuity, and recurrence of the employment eliminates the char-

acteristics of incidental and casual. The compensability of the accident depends on the existence of these conditions when the work performed is not included within the employer's profession, business, industry, or occupation. See: *Aleckson* v. *Kennedy Motor Sales Co.*, 55 N.W.2d 696, 701 (Minn. 1952); *McCabe* v. *Shanahan & Son*, 24 A.2d 16 (Pa. 1942); *Ludwig* v. *Kirby*, 80 A.2d 239 (N.J. 1951); *Billmayer* v. *Sanford*, 225 N.W. 426, 427, 177 Minn. 465, 467.

▉▉ Gardener Ortega, who said he was "a poor hireling" and who "was instructed on what to do" by his employer and his wife, can not be considered as an independent contractor. In *Atiles, Mgr.* v. *Industrial Commission*, 63 P.R.R. 573, 577 (1944), we said that "this Act, when referring to the independent contractor, always means the one who contracts for a job and employs workmen to accomplish it."

▉ On the other hand, Ortega was hired by a houseman, without gainful purpose, for a monthly salary, to perform the manual labor of conditioning his house garden twice a month. His labor meant to the family living therein the pleasure and satisfaction which a well-cultivated and tended garden produces. Under those circumstances, he was an employee engaged in Bustelo's domestic service whenever he was performing his work as a gardener, even though he lived outside, as were the other servants and employees, within the broader sense of the term "domestic service." See *Jack* v. *Belin's Estate*, 27 A.2d 455, 457 (Pa. Sup. 1942); *Anderson* v. *Ueland*, 267 N.W. 517, 518 (1936), 197 Minn. 518; 2 SCHNEIDER, Workmen's Compensation, § 627 (3d ed.), and 1 Supp. 1958, 498.

▉▉ Without making distinction, the Act provides protection in its §§ 2 and 38 to domestic servants. It so provided at the time of the accident. Being "of a remedial character," as stated in the second paragraph of § 2, it must be construed liberally in order that its protective mission may cover a greater number of injured workmen and never in the sense

of limiting that number beyond the express limitations provided in the Act itself.

Lastly, referring once again to the observation made in the *Arraiza* case *supra* to the effect that the Industrial Commission has not adopted the regulation provided by the Act defining incidental or casual employment, we wish to add that after the amendment of 1957, eliminating the requirement of the employment of three or more workmen and the previous exclusion of the domestic service, all citizens being practically required by the Act to take out insurance, it is even more important that such regulation be adopted for the benefit of the insureds, and of the workmen so that one as well as the other may have a known standard of the situations which may constitute accidental or casual employment.

The decision appealed from will be affirmed.