632 A.2d 950

**Christina DUTROW, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (HECKARD'S CATERING), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 7, 1993.

Decided Oct. 5, 1993.

---

638

Richard Robinson, for petitioner.

Leigh A.J. Ellis, for respondent.

Before CRAIG, President Judge, and PALLADINO, J., and KELTON, Senior Judge.

CRAIG, President Judge.

The claimant, Christine Dutrow, appeals from a decision of the Workmen's Compensation Appeal Board reversing the decision of a referee that included additional sources of income in the calculation of the claimant's average weekly wage. We are asked whether the board erred by not permitting benefits for work which the referee found to be domestic duties and responsibilities. We affirm in part and reverse in part.

The facts as found by the referee are as follows:

1. Claimant suffered a work related injury on May 11, 1987.

2. Claimant filed a petition for review of compensation payable alleging a higher weekly wage not indicated on the prior notice of compensation.

3. Claimant was paid wages by Barry Heckard, at the time of her work related injury *for domestic and job related responsibilities* on a weekly basis at $10.00 per week.

4. Claimant was paid wages at the time of her work related injury of $25.00 per week from Laura Dutrow for

the performance and discharge of domestic duties and responsibilities.

5. Claimant was paid wages at the time of her work related injury of $25.00 per week from Evelyn Rebruck for the performance and discharge of domestic duties and responsibilities.

6. Claimant was paid wages at the time of injury of approximately $50.00 per month from Betty Heckard for the performance and discharge of domestic duties and responsibilities.

7. Since the time of her work related injury, claimant has not been able to perform the domestic duties and responsibilities for compensation as she had done prior to the work related injury. (Emphasis added.)

The referee concluded that, based on the above facts, the claimant's "prior notice of compensation was materially incorrect in that she had a higher average weekly wage at the time of the filing of the notice of compensation payable". Therefore, the referee ordered that the claimant receive compensation at the increased rate of $180.50 a week plus interest on past due compensation.

The employer, Heckard's Catering, appealed the referee's decision to the board which reversed the order. The board noted that s 321 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. s 676 (the Act), provides that "(n)othing contained in this Act shall apply to or in any way affect any person who at the time of injury is engaged in domestic service." Then the boarded stated that "[t]his exemption is all inclusive such that the concurrent wages identified by the Referee should not have been included in determining Claimant's average weekly wage. These wages were generated by domestic service."

█ Now the claimant comes before this court and asserts that the board erred by determining that she is not entitled to additional income as ordered by the referee. Our scope of review is limited to determining whether the referee's findings of fact are supported by substantial evidence, and whether the

board or the referee violated the claimant's constitutional rights, or committed an error of law. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

 In order for a person engaged in domestic services to receive benefits under the Act, "the employer of any such person shall have, prior to such injury, by application to the Workmen's Compensation Board, approved by the Board, elected to come within the provisions of the Act". Section 321 of the Act. In the case before us, none of the claimant's employers ever applied to come within the provisions of the Act. Therefore, to the extent that the claimant is engaged in domestic service, her loss of wages for a work-related injury cannot be compensated. Additionally, we note that whether or not work constitutes domestic service under the Act is a question of law reviewable by this court.

In the case before us, the referee found that the claimant performed domestic services, yet nonetheless awarded supplemental benefits to reflect her lost wages. In addition, although the board reversed the referee and reinstated the claimant's earlier compensation rate, our review of the record reveals that a portion of the claimant's additional earnings is compensable under the Act as incidental work performed at the request of her employer.

 This court has stated that domestic service is only that work which serves the needs of a household. *Viola v. Workmen's Compensation Appeal Board (Welch)*, 121 Pa.Commonwealth Ct. 47, 549 A.2d 1367 (1988). In *Viola* this court held that a claimant, who was hired to care for her employer's invalid wife, and whose job included administering medication, feeding, bathing and dressing the employer's wife, and helping her in and out of bed was not a domestic servant under the Act. This court placed great weight on the fact that the claimant only administered to the specialized medical needs of her ward.

Claimant did not serve, nor was she employed to serve, the needs of the household. All of Claimant's job duties as

found by the referee and supported by substantial evidence in the record related solely to the unique needs of [the employer's wife], rather than the general needs of the household.

The referee specifically found that Claimant did not perform any housework and performed no domestic or maid services. There was testimony that Claimant did not do any housecleaning and was hired only to care for [the employer's wife] . . .

Because Claimant's job involved performing duties similar to those of a nurse's aide . . . and did not involve performing household duties, we conclude that Claimant was not engaged in "domestic service" for purposes of the Act. (Footnotes omitted.)

Such is not the case with the claimant's work here. At the hearing before the referee regarding the petition for review, the claimant, on direct examination, described the work for which she now seeks additional compensation benefits as follows:

Q.: Prior to May 11, 1987, other than your employment at Heckard's Catering, did you have any other sources of income?

A.: Yes, I did a lot of extra jobs. From November of that year, '86 previous, I had worked for my neighbor Evelyn Rebruck when she was ill until the accident and I was doing baby-sitting, picking up my little grandson from school, which my son and daughter-in-law reimbursed me for each week.

I had been cleaning for Mrs. Heckard [the mother of the owner of the employer] and at the business and also, other than my check, Barry Heckard [the owner of the business] had given me $10 extra in my check each week for doing onions, lettuce and other things because I came in at 5:30 in the morning before the others came in at 6:00 or later.

. . . .

Q.: Specifically, what type of duties did you perform for Barry and Betty Heckard?

A.: ... *I went in early and did a lot of things to get ready before the other people came to work and for that Barry used to give me ten extra dollars in cash plus my check ... Saturday's I would go to Betty's house and clean her house and there would be times that I would go to the business on Saturdays and clean the business.*

. . . .

Q.: Directing your attention then to Evelyn Rebruck, what type of duties did you perform for her?

A.: Well, *I did her housework and her laundry. I cleaned her house, went to the bank or when she needed it, and did her grocery shopping.*

Q.: Where would you perform these duties? At her residence?

A.: At her home. She's my neighbor, she was ill ... I'd go in every evening when I came home from work and check on her and see she had the things she needed.

. . . .

Q.: You also indicated that on or about or as of May 11, 1987 you did certain duties or chores and discharged those for Laura Dutrow. Are you related to Mrs. Dutrow?

A.: Yes, she's my daughter-in-law ... [S]he went to work in the afternoon. My son didn't get in until the evening and *when I got off from work at Heckard's then I went to Northside School and picked up my little grandson. He was in first grade then and then I took him home and I took care of him, fed him his meal and everything.* For that my son gave me $25 a week. (Emphasis added.)

The work that the claimant did for Betty Heckard and Evelyn Rebruck is domestic service because it is work that serves the needs of those respective households. Therefore, the board did not err in denying compensation for those activities.

▮ In addition, we agree with the board that the claimant's baby-sitting work for Laura Dutrow is not compensable under the Act. The claimant suggests that *Viola* indicates

that baby-sitting is not domestic service because baby-sitting does not benefit the needs of a household. The claimant contends that baby-sitting serves the specialized needs of the child in the same way that the claimant's services in *Viola* served only the needs of the employer's wife.

However, in *Viola,* this court concluded that the claimant acted as a nurse's aide. She served the particular needs of her charge for the entire day. In our case there is no indication that the claimant acted as a nurse's aide for her grandson. In addition, the claimant baby-sat her grandson only from the time she finished work until the time her daughter-in-law could pick-up the child.

The claimant has not provided any case law, nor are we aware of any, holding that baby-sitters may be compensated under the Act. Without any supporting case law or statutory authority, we are not prepared to require coverage under the Act for baby-sitters who are working for employers which have not elected to come within the provisions of the Act pursuant to § 321. Therefore, the board correctly denied the claimant's request to include sums paid for baby-sitting in her compensation calculation.

■ However, the claimant also performed extra duties that are related to her employment at Heckard's Catering. The claimant testified that she prepared foods before other employees arrived at work and that she occasionally cleaned the work premises. These activities are not performed for the benefit of a household and they are related to the work for which the claimant was hired at Heckard's Catering. Therefore, we conclude that these activities are not domestic services and that the board erred in refusing to compensate the claimant for these lost wages.

Nonetheless, it is impossible for us to determine from the record how much the claimant earned for purposes of calculating her compensation benefits. Therefore, we must remand this case to the board so that they may determine the amount of the claimant's additional compensation benefits.

Accordingly, we affirm the board insofar as it denied the claimant benefits for wages earned from Betty Heckard, Evelyn Rebruck and Laura Dutrow. However, we reverse the board insofar as it denied benefits to the claimant for wages earned from Barry Heckard. We remand the case to the board so that it may determine the amount of wages lost by the claimant because of her work-related injury.

## ORDER

NOW, October 5, 1993, the decision of the Workmen's Compensation Appeal Board, dated November 25, 1992, at A92–0573, is affirmed insofar as it denies benefits for wages earned from Betty Heckard, Evelyn Rebruck and Laura Dutrow, and it is reversed insofar as it denies benefits to the claimant for wages earned from Barry Heckard. This case is remanded to the Workmen's Compensation Appeal Board to recalculate the amount of the claimant's average weekly wage.

Jurisdiction relinquished.