Pamela Joan Van Leer,  :
          Petitioner  :
            :
          v.  :
            :
Workers' Compensation Appeal  :
Board (Hudson),  :   No. 1127 C.D. 2018
          Respondent  :   Argued: February 11, 2019


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ANNE E. COVEY, Judge (P.)
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COVEY                  FILED: February 27, 2019


      Pamela Joan Van Leer (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) July 17, 2018 order affirming the WC Judge's (WCJ) decision denying Claimant's Claim Petition. The sole issue before this Court is whether Claimant's duties as a caretaker for a woman suffering from mild dementia comes within the domestic service exception to the WC Act (Act)[1] (Domestic Service Exception).[2]

      On June 2, 2016, Claimant was injured while taking care of her employer Suzanne Hudson (Employer/Hudson). Claimant filed the Claim Petition on October 13, 2016. Claimant alleged therein that she sustained injuries in the course and scope of her employment, including a broken nose, damaged teeth, lacerations on her face, hands, legs, aggravation of pre-existing arthritis and a concussion. Claimant further averred that she sustained possible scarring on her face. Employer filed an

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.
[2] *See* Section 321 of the Act, *as amended*, added by Section 22 of the Act of March 29, 1972, P.L. 159, 77 P.S. § 676.

Answer, denying the material averments of the Claim Petition, and also alleging that Claimant was precluded from WC benefits under the Act's Domestic Service Exception.

A WCJ hearing was held on November 18, 2016, at which time the case was bifurcated on the issue of whether the Domestic Service Exception applies. On January 13, 2017, the WCJ denied the Claim Petition, concluding that Claimant was engaged entirely in domestic service. Claimant appealed to the Board. On July 17, 2018, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[3]

Initially, Section 321 of the Act provides, in relevant part:

> Nothing contained in this [A]ct shall apply to or in any way affect:
>
> > (1) Any person who at the time of injury is engaged in domestic service: Provided, however, That in cases where the employer of any such person shall have, prior to such injury, by application to the [D]epartment [of Labor and Industry (Department)] and approved by the [D]epartment, elected to come within the provisions of the [A]ct, such exemption shall not apply.[4]

77 P.S. § 676.

Claimant argues that her duties as Hudson's caretaker do not fall within the Domestic Service Exception. Specifically, Claimant contends that this Court should reject the Board's test that requires an in-home employee to have and use professional expertise in her work to be compensated under the Act. Claimant maintains that the test should follow the precedent and define domestic service as

---

[3] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

[4] It is undisputed that Employer did not elect to come within the Act's provisions.

including the general needs of a household resident or whole household and not the specialized and particular medical needs of an individual in the household.

The Board rejoins that precedent holds that someone who is engaged in domestic service: (1) works in or around the employer's home; (2) for the comfort and benefit of the employer's household; but (3) does not further the employer's business interests; and (4) does not provide professional or skilled services. Relying on this test, the Board maintains that Claimant is a domestic servant.

There is little case law on this issue as to whether Claimant's duties as a caretaker for a woman suffering from dementia fall within the Domestic Service Exception. However, the interpretation of what precedent holds is varied. Accordingly, this Court will conduct its own analysis.

We begin our review with *Vaughn v. McFadden*, 35 Pa. D. & C. 307 (1939), wherein a common pleas court explained the exclusion which, at that time excepted from the term employee, "all who are engaged in 'domestic services performed in a private home'."[5] *Id.* at 308.

> The [Act] was passed primarily for the benefit of the great army of business and industrial workers, for whom the common-law remedy, which had arisen out of the conditions surrounding the small shop and the use of simple machinery or no machinery at all, seemed to have become inadequate. Its motivating philosophy was that the loss arising from accidents in industry should not be borne in such heavy proportions by the employe, and that these losses should be added to the cost of production, the same as losses sustained in the destruction or deterioration of machinery. Accordingly, the legislature did not find it necessary to include all classes of employes within the scope of the [A]ct in order to accomplish its purposes. Partly for this reason, and partly for reasons of administrative convenience, **persons engaged in domestic services performed in a private home have been excluded** from the operation of the [A]ct. This background

---

[5] *See* former Section 304 of the Act.

3

should be borne in mind in considering the meaning of the term 'domestic services.'

*Vaughn*, 35 Pa. D. & C. at 309 (citations omitted; emphasis added). In *Vaughn*, the "[c]laimant's statement as to her duties was as follows: '. . . all she wanted was somebody to be a companion, to go out with her when she wanted to go out and things of that kind and just be there if she wanted me for anything. There really were no duties.'" *Vaughn*, 35 Pa. D. & C. at 308. Based on the above, the *Vaughn* court concluded that the claimant, who was hired to be a companion, "was engaged in 'domestic service performed in a private home' within the meaning of [S]ection 304 of [Act.]" *Id.* at 311.

Shortly thereafter, the Pennsylvania Superior Court expounded:

The question, here raised, involves a construction of the [Act] to determine its scope and intent.[6] In a strict sense a domestic servant is one who resides in the same house with the master whom he serves (1 Bouv. Law Dict., Rawle's Third Rev., p. 914); one who lives in [sic] the family of another as a hired household assistant; a house servant (19 C.J. 389; 27 C.J.S., Domestic, p. 1318; 1 Blackstone 328). But, in its broader meaning, 'domestic' also includes services 'pertaining to one's house or home, or one's household or family; relating to home life.' (Webster).

The coupling of domestic servants with agricultural workers, in the same Act, is significant. Agricultural workers are those who are engaged in an enterprise conducted by the employer for his profit. House servants merely contribute to the personal needs and comfort of the employer. Between the two groups are the outservants, who in strictness do not fall within either class. And yet there is much better reason for excluding gardeners, caretakers and the like, than agricultural workers, for they are not engaged in a commercial enterprise and their services all relate to the home life. **Our conclusion, in**

---

[6] Referring to "the [] Act of June 21, 1939, P.L. 565, 77 P.S. § 1a, which provides that the Act shall not 'apply to or in any way affect any person who at the time of injury is engaged in domestic service or agriculture.'" *Jack v. Belin's Estate*, 27 A.2d 455, 456 (Pa. Super. 1942). Secton 1a of the Act was repealed by Section 26 of the Act of March 29, 1972, P.L. 159.

4

**construing the Act, is that the place where the services are performed does not determine the nature of the employment. Cooks and house maids are domestic servants, not because they work indoors, but because they serve the needs of the household**. Similarly, one who drives an automobile in bringing supplies from market or in disposing of waste materials or who raises vegetables and produce for use on the estate is a domestic servant in the broader sense contemplated by the Act. Growing flowers for the delight and pleasure of the family of the owners is the same kind of service. Where, as here, the grounds, though extensive, are maintained as the curtilage to the mansion house and for the comfort and pleasure of the occupants, they who thus minister to the needs of the owners, according to the standard of living established by them, are domestic servants within the purview of the Act.

*Jack v. Belin's Estate*, 27 A.2d 455, 457 (Pa. Super. 1942) (emphasis added). Based thereon, the Superior Court concluded that the claimant, as the estate's gardener, provided "domestic service" and was, thus, "excluded from all benefits under the [] Act." *Belin's Estate*, 27 A.2d at 457.

This Court first attempted to define the term domestic service, as it is used in Section 321 of the Act, in *Viola v. Workmen's Compensation Appeal Board (Welch)*, 549 A.2d 1367 (Pa. Cmwlth. 1988). Therein, the claimant

was employed by [the p]etitioner on a permanent basis to care for [his] wife (Mrs. Viola), who was an invalid confined to a wheelchair. [The c]laimant's job duties included giving Mrs. Viola her medication, feeding Mrs. Viola, bathing Mrs. Viola, and helping Mrs. Viola get in and out of bed and get dressed.

*Id.* at 1368. Relying on *Belin's Estate*, the *Viola* Court concluded:

[I]t is clear that [the **c**]**laimant was not engaged in 'domestic service**.' [The c]laimant did not serve, nor was she employed to serve, the needs of the household. **All of** [**c**]**laimant's job duties** as found by the [R]eferee and supported by substantial evidence in the record **related solely to the unique needs of Mrs. Viola**, rather than the general needs of the household.

5

*Id.* at 1369 (emphasis added). The Court expressly held: "Because [the c]laimant's job involved performing duties similar to those of a nurse's aide, . . . and did not involve performing household duties, we conclude that [c]laimant was not engaged in 'domestic service' for purposes of the Act." *Viola*, 549 A.2d at 1369.

This Court next addressed the Domestic Service Exception in *Dutrow v. Workmen's Compensation Appeal Board (Heckard's Catering)*, 632 A.2d 950 (Pa. Cmwlth. 1993). In *Dutrow*, the Referee determined that the claimant performed domestic service yet nevertheless awarded WC benefits. The Board reversed the Referee's decision. Although this Court agreed that the claimant's domestic service work was excluded under the Act, it independently reviewed the claimant's duties to make its own determination relative to what work included domestic service. The claimant's relevant responsibilities included: (1) picking her grandson up from school, feeding him and taking care of him for her daughter-in-law; (2) doing housework, laundry, house cleaning, banking and grocery shopping for her neighbor at her neighbor's home; and (3) house cleaning on Saturdays for her employer's wife.

The *Dutrow* Court concluded that claimant's work for her employer's wife (cleaning) and her neighbor (housework) was domestic service because it was work that served the needs of those respective households. With respect to the babysitting, claimant argued that babysitting is not domestic service because babysitting does not benefit the needs of a household. The claimant contended that babysitting serves the specialized needs of the child in the same way that the claimant's services in *Viola* served only the needs of Mrs. Viola. However, the *Dutrow* Court concluded that **there was no indication that the claimant acted as a nurse's aide for her grandson, and that claimant babysat her grandson only from the time she finished work until the time her daughter-in-law could pick-up the child. Thus, the Court held that the Act does not require coverage for**

6

**babysitters who work for employers who have not elected to come within the provisions of the Act**. *Id.*

This Court most recently addressed the Domestic Service Exception in *Fletcher v. Workers' Compensation Appeal Board (Saia)* (Pa. Cmwlth. No. 1664 C.D. 2009, filed March 26, 2010). In addition to deciding whether the claimant was an employee or an independent contractor, the Court had to determine whether claimant's services were domestic work excluded under Section 321 of the Act. Although the Board cites this case in support of its position (because the Board found claimant's duties, which included home healthcare and helping with bathing and meal preparation and light housekeeping, were domestic service), this Court did not address the domestic service issue. Specifically, the *Fletcher* Court noted:

> [The c]laimant next contends that the Board erred when it determined that [the c]laimant engaged in domestic service with respect to her work . . . and was ineligible to receive [WC] benefits. Because this Court has determined that [c]laimant was not an employee . . . , **this Court need not address this issue**. The Board did affirm . . . on the basis that [c]laimant engaged in domestic work. Although the Board determined that the WCJ credited in full the testimony of Saia which included statements that [c]laimant performed nonmedical personal services . . . as well as light housework, a review of the record reveals that the WCJ did not make any specific findings regarding domestic service. Therefore, **this Court cannot determine based on the record whether [c]laimant was a domestic worker and exempt from the Act**. However, this Court affirms on the basis that [c]laimant was not an employee. This Court may affirm on other grounds where grounds for affirmance exist.

*Fletcher*, slip op. at 14 n.9 (emphasis added). Accordingly, *Fletcher* is not relevant to the Court's current analysis.

The law is well-settled that "whether or not work constitutes domestic service under the Act is a question of law reviewable by this [C]ourt." *Dutrow*, 632 A.2d at 952. Claimant argues that her work is more akin to a nurse's aide whose

7

duties are within the purview of the Act, than a babysitter whose responsibilities are not. The Board retorts that the only difference between Claimant's duties and that of a babysitter is the age of the person for whom she cared.

Having reviewed the evolution of the law in this area, this Court agrees with the Board herein. First, this Court in *Dutrow* held that one who cares for a child is excluded under the Domestic Service Exception. In the instant case, the WCJ determined that Claimant was credible. *See* WCJ Dec. at 4. The WCJ found as a fact that Claimant testified:

> a. Claimant's job was to make sure that the needs of [] Hudson were being met. **Claimant was to make sure that [] Hudson did not fall, get hurt or leave the house**. She explained that [] Hudson suffered from 'a little dementia.'
>
> b. Claimant worked at night. Her duties included making sure that [] Hudson was ready for bed, and had her medicine. She would make sure that [] Hudson went into her bedroom and was asleep, then Claimant would come back downstairs and stay up all night long. Claimant would also sometimes let [] Hudson's dogs out. Claimant gave some examples of her interactions with [] Hudson, but stated that **her job consisted mostly of 'sitting there making sure.'**
>
> c. Claimant acknowledged that [] Hudson lived alone. There were no other members of her household. Claimant acknowledged that other than making sure that [] Hudson took her medicine, she did not provide any type of medical care.

WCJ Dec. at 4 (Finding of Fact 3) (emphasis added; record citations omitted). Claimant does not dispute these findings.

The WCJ concluded: "Claimant's duties consisted entirely of service to members of the household, which consisted solely of [] Hudson. Within Claimant's credible testimony, she specifically denied providing any other type of service, such as medical care, to [] Hudson." WCJ Dec. at 4 (Conclusion of Law 3). Given that

Claimant's main responsibility was to get Hudson ready for bed and make sure she stayed in bed throughout the evening, we discern no error in the WCJ's conclusion.

Accordingly, Claimant's duties as a caretaker for a woman suffering from mild dementia falls within the Domestic Service Exception.

For all of the above reasons, the Board's order is affirmed.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pamela Joan Van Leer,           :
            Petitioner         :
                               :
            v.                :
                               :
Workers' Compensation Appeal  :
Board (Hudson),            :    No. 1127 C.D. 2018
            Respondent    :

## O R D E R

AND NOW, this 27th day of February, 2019, the Workers' Compensation Appeal Board's July 17, 2018 order is affirmed.

_____
ANNE E. COVEY, Judge