## ESTADO LIBRE ASOCIADO DE PUERTO RICO
## TRIBUNAL DE APELACIONES
## PANEL IV

| | | |
|---|---|---|
| AILEEN ENCARNACIÓN COLÓN<br>Recurrido<br><br>v.<br><br>LORENA NEGRONI HERNÁNDEZ, UNIVERSAL INSURANCE COMPANY INC., ASEGURADORAS 1-10 Y DEMANDADOS DESCONOCIDOS 1-10<br>Peticionario | KLCE202401317 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. GB2023CV01152<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos

Rivera Marchand, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 28 de enero de 2025.

Comparece Universal Insurance Company (Universal o peticionaria) y nos solicita la revocación de una *Resolución* que el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario) notificó el 19 de septiembre de 2024.[1] En esta, el foro primario se negó a desestimar sumariamente la causa instada en su contra.

Por los fundamentos que exponemos a continuación, expedimos el auto de *certiorari* y revocamos la *Resolución* recurrida.

### I.

La señora Aileen Encarnación Colón (señora Encarnación Colón) sufrió una caída mientras laboraba en la residencia de la señora Lorena Negroni Hernández (señora Negroni Hernández). A consecuencia del suceso y de las alegadas lesiones sufridas, las cuales requirieron de varios procedimientos quirúrgicos para reconstruirle la pierna y de un extenso tratamiento médico, la

---

[1] Apéndice, págs. 257-262.

Número Identificador

SEN2025_____

señora Encarnación Colón instó la *Demanda* de epígrafe en contra de la señora Negroni Hernández y de Universal.[2] Reclamó el resarcimiento de los daños y perjuicios sufridos, el pago de una indemnización adicional al amparo del Artículo 1538 del Código Civil de Puerto Rico, 31 LPRA sec. 10803, así como las costas, gastos y honorarios de abogado.

En reacción, la señora Encarnación Colón acreditó su alegación responsiva y, a su vez, incoó una demanda contra coparte, mediante un escrito intitulado *Contestación a la Demanda, Defensas Afirmativas y Demanda contra Coparte*.[3] En esta última adujo que, Universal rechazó autorizar una cubierta para los hechos alegados en la demanda, por interpretar que la póliza emitida y vigente no aplica a la reclamación objeto de este pleito.

Así las cosas y atinente al recurso ante nos, el 3 de junio de 2024, Universal presentó una *Solicitud de Sentencia Sumaria Parcial*.[4] En ella propuso nueve (9) hechos incontrovertidos para sustentar su solicitud de desestimación de la causa instada en su contra. Puntualizó que, la reclamación de la señora Encarnación Colón no está cubierta por la póliza de seguros PPK 1556471, expedida por Universal a favor de la señora Negroni Hernández. Ello, porque el incidente objeto de la demanda se encuentra expresamente excluido, según el endoso UNPP00 03 07 13.[5] En particular, al definir empleado asegurado, como aquel cuyas labores están relacionadas al mantenimiento o uso del predio de la

---

[2] Apéndice, págs. 1-6.

[3] Apéndice, págs. 7-33.

[4] Apéndice, págs. 34-228. Junto a su petitorio incluyó los siguientes documentos: Exhibit I-Carta de 8 de marzo de 2023 suscrita por el Lic. Jorge R. Quintana Lajara, Exhibit II-Carta de 23 de marzo de 2023 suscrita por el Lic. Carlos R. Paula; Exhibit III-Carta de 28 de marzo de 2023 suscrita por la señora Lorraine Negroni; Exhibit IV-Informe de Investigación del señor Jorge Reyes; Exhibit V-Carta de 3 de abril de 2023 suscrita por el señor Jorge Reyes; Exhibit VI-Póliza Núm. PPK1556471; Exhibit VII- Manual de Clasificaciones de Oficios e Industrias y Tipos de Seguros de 1 de julio de 2021 al 30 de junio de 2022; Exhibit VIII-Manual de Clasificaciones de Oficios e Industrias y Tipos de Seguros de 1 de julio de 2022 al 30 de junio de 2023; Exhibit IX-Manual de Clasificaciones de Oficios e Industrias y Tipos de Seguros de 1 de julio de 2023 al 30 de junio de 2024.

[5] Apéndice, pág. 130.

residencia, incluyendo las labores caseras o domésticas. Universal arguyó, además, que la póliza establece que no cubrirá las reclamaciones de daños a cualquier persona cobijada por la Ley Núm. 45 de 18 de abril de 1935, según enmendada, conocida como la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 LPRA secs. 1 *et seq.* (Ley Núm. 45).

En reacción, la señora Encarnación Colón se opuso al referido petitorio sumario.[6] A pesar de consignar expresamente que, los hechos que propuso Universal no están en controversia, arguyó que no procedía adjudicar la causa por la vía sumaria. Ello, por entender que, "en cuanto al aspecto jurídico, es posible que la situación particular de la demandante con su patrono pueda conducir a una interpretación y conclusión legal distinta que haga improcedente la Solicitud de Sentencia Sumaria Parcial."[7]

Por su parte, la señora Negroni Hernández también se opuso a la solicitud de sentencia sumaria propuesta por Universal.[8] En su escrito admitió tres (3) propuestas de hechos y negó las restantes.[9] Centró sus argumentos en que, la señora Encarnación Colón era una contratista independiente, no una empleada. Expuso que Universal, como promovente del petitorio sumario, no demostró que la señora Encarnación Colón, a la fecha de los hechos, era empleada de la señora Negroni Hernández, y no contratista independiente. Por los mismos fundamentos arguyó que, tampoco aplica la exclusión de persona cobijada bajo la Ley Núm. 45, *supra,* debido a que no existía una póliza vigente con la Corporación del Fondo del Seguro del Estado (CFSE).[10]

---

[6] Apéndice, págs. 229-232.
[7] Apéndice, pág. 232.
[8] Apéndice, págs. 233-256. Acompañó su escrito en oposición del Exhibit I-Declaración jurada suscrita por Lorraine Elena Negroni Hernández, el 29 de julio de 2024.
[9] Admitió las propuestas números 2, 3 y 4. Sin embargo, se opuso a las propuestas números 1, 5, 6, 7, 8 y 9, respectivamente.
[10] Apéndice, págs. 244-246.

Evaluadas las referidas mociones, el TPI declaró no ha lugar a la *Solicitud de Sentencia Sumaria Parcial.* En la *Resolución* recurrida, el foro primario consignó los siguientes hechos incontrovertidos:

1. El 2 de septiembre de 2022, la señora Encarnación (parte demandante), pintaba una pared en el hogar de la señora Negroni (codemandada) cuando sufrió una caída en dicho lugar.

2. La parte demandante realizaba labores de limpieza en el hogar de la codemandada una vez a la semana, por espacio de año y medio, aproximadamente.

3. La codemandada no era un patrono asegurado por la Corporación del Fondo del Seguro del Estado (CFSE) a la fecha de los hechos narrados en la demanda.

4. Universal tenía una póliza "Unipack Personal" Núm. PPK1556471 expedida a favor de la codemandada, vigente desde el 05/07/2022 hasta 05/07/2023.

5. La póliza en el endoso UNPP 00 03 07 13 define lo que es un empleado de la residencia como un empleado de un asegurado, cuyas labores estén relacionadas con el mantenimiento o uso de los predios de la residencia, incluyendo labores caseras o domésticas. Véase[,] Endoso UNPP 00 03 07 13.

   I. *DEFINITIONS:*

   *[...]*

      F. *"Residence employee" means:*

         *1. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or*

         *2. One who performs similar duties elsewhere not related to the "business" of an "insured".*

6. Bajo la parte II – Cubiertas, se establece el acuerdo de seguro de la siguiente forma:

   II. *COVERAGES*

      A. *COVERAGE A – Personal Liability*

         *If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury", "property damage" or "personal injury" caused by an "occur[e]nce" or offense to which this coverage applies, we will:*

            *1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. [...]; and*

            *2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. [...].*

7. Bajo la cubierta A, sobre Responsabilidad Personal–en la sección III – EXCLUSIONES, se establece que no se cubrirán reclamaciones sobre daños a cualquier persona que esté comprendida entre las cobijadas por las leyes de

compensación por accidentes de trabajo, beneficios por incapacidad no ocupacional, o leyes que cobijen al trabajador por enfermedad ocupacional:

> *III. EXCLUSIONS*
> *[…]*
> *B. COVERAGE A – **Personal Liability does not apply to***:
> *[…]*
> *4. **"Bodily injury" to any person eligible to receive any benefits***:
>> *a) Voluntarily provided; or,*
>> *b) **Required to be provided***; by the *"inured" under any:*
>>> ***(1) Workers compensation law***;
>>> *(2) Non-occupational disability law; or*
>>> *(3) Occupational disease law;*
>> (Énfasis suplido.)

8. La Corporación del Fondo del Seguro del Estado de Puerto Rico clasifica la labor del empleado doméstico como un oficio asegurable bajo la Ley Núm. 45 de 18 de abril de 1935, según enmendada, conocida como *Ley del Sistema de Compensaciones por Accidentes del Trabajo* (Ley Núm. 45), 11 LPRA sec. 1, *et seq.* Véase el Manual de Clasificaciones de Oficios e Industrias y Tipos de Seguros.

> Clasificación 0912-011 -Empleados domésticos y Amas de Llave. Todos los empleados del asegurado que realizan labores domésticas y de mantenimiento en residencias privadas. Incluye empleados tales como cocineras, empleadas domésticas, acompañantes, niñeras, enfermeros, jardineros, amas de llave, planchadoras y contratistas que prestan servicios domésticos dentro de la residencia del cliente, choferes y sus ayudantes.
> […][11]

De otra parte y como único hecho en controversia, el foro primario identificó lo siguiente:

1. Si la póliza núm. PPK1556471 que Universal expidió a favor de la codemandada expresamente excluye de su cubierta daños como los reclamados en la "Demanda" del presente caso.

Luego de solicitar sin éxito la reconsideración del dictamen,[12] la peticionaria acude ante nos y señala el siguiente error:

> Erró el TPI al determinar que existe controversia sobre si la póliza PPK1556471 que Universal expidió a favor de la recurrida Negroni expresamente excluye la reclamación instada por la recurrida Encarnación cuando los términos de la exclusión en la póliza son claros y libres de ambigüedades.

---

[11] Apéndice, págs. 258-260.

[12] Apéndice, págs. 264-277. Cabe señalar que, tanto la señora Encarnación Colón como la señora Negroni Hernández se opusieron al petitorio de reconsideración de Universal. Apéndice, págs. 278-291. Evaluado lo anterior, el TPI notificó una *Resolución,* el 7 de noviembre de 2024, negándose a reconsiderar. Apéndice, págs. 292-293.

Tanto la señora Encarnación Colón como la señora Negroni Hernández se oponen a la expedición del auto de *certiorari*. En particular, la señora Negroni Hernández cuestiona la precisión de la traducción al español de la cláusula de exclusión según Universal. Lo antes, a los efectos de establecer que, la póliza objeto de este litigio no excluye el evento ocurrido en la medida en que, la señora Negroni Hernández no aseguró a la señora Encarnación Colón en la CFSE y, por tanto, no era persona elegible a recibir los beneficios de la ley de compensaciones laborales. Finalmente expone que, la referida cláusula de exclusión adolece de vaguedad y ambigüedad, y no aplica a la señora Encarnación Colón, quien trabajaba en calidad de contratista independiente, cuando ocurrió el accidente en cuestión. Ello, toda vez que su caída se originó mientras pintaba una pared, lo cual no es una actividad inherente a las labores de limpieza de una empleada doméstica.

Por su parte, la señora Encarnación Colón fundamenta su oposición en que, existe controversia fáctica sobre la naturaleza de la relación laboral entre ella y la señora Negroni Hernández la cual impide ser dirimida previo a realizar el correspondiente descubrimiento de prueba.

Con el beneficio de las posturas de las partes, resolvemos.

**II.**

A. *Certiorari*

El recurso de *certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Es norma reiterada que, una resolución u orden interlocutoria, contrario a una sentencia, es revisable ante el Tribunal de Apelaciones mediante auto de *certiorari. Rivera et al. v. Arcos Dorados et al,* supra. A

diferencia del recurso de apelación, el tribunal revisor tiene la facultad de expedir el auto de *certiorari* de manera discrecional. *Torres González v. Zaragoza Meléndez,* supra.

Por su parte, la Regla 52.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1*,* limita la facultad que tiene el foro apelativo intermedio para revisar las resoluciones u órdenes interlocutorias que emite el foro primario. *Caribbean Orthopedics v. Medshape, et al.,* 207 DPR 994 (2021). Esa regla establece que el recurso de *certiorari* solo se expedirá cuando se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo. *Torres González v. Zaragoza Meléndez,* supra.

No obstante, la citada Regla 52.1, también dispone que el tribunal apelativo, en su ejercicio discrecional y por excepción, podrá expedir un recurso de *certiorari* cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier otra situación en la que esperar a una apelación constituiría un fracaso irremediable a la justicia. *Íd.* El delimitar la revisión a instancias específicas tiene como propósito evitar las "dilaciones innecesarias, el fraccionamiento de causas y las intervenciones a destiempo." *800 Ponce de León v. AIG*, 205 DPR 163, 191 (2020).

Por otro lado, el examen que hace este Tribunal previo a expedir un auto de *certiorari* no se da en el vacío ni en ausencia de otros parámetros. *Torres González v. Zaragoza Meléndez,* supra. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que debemos tomar en consideración al evaluar si procede expedir el auto de *certiorari.*

*Banco Popular de Puerto Rico v. Gómez Alayón y otros,* 2023 TSPR 145, resuelto el 19 de diciembre de 2023. La citada regla dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El foro apelativo debe ejercer su facultad revisora solamente en aquellos casos en los cuales se demuestre que el dictamen emitido por el foro de instancia es arbitrario o constituye un exceso de discreción. *Banco Popular de Puerto Rico v. Gómez Alayón y otros,* supra.

**B. Sentencia Sumaria**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36, permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no existe duda sobre los hechos esenciales y se cuenta con la evidencia necesaria, de manera que, solo resta aplicar el derecho. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* 2025 TSPR 1, resuelto el 7 de enero de 2025; *Cruz Cruz y otra v. Casa Bella Corp. y otros,* 2024 TSPR 47,

resuelto el 8 de mayo de 2024. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues agiliza el proceso judicial, mientras simultáneamente provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Serrano Picón v. Multinational Life Ins.,* 212 DPR 981, 992 (2023). Como se sabe, procede dictar sentencia sumaria si se desprende de las alegaciones, deposiciones, declaraciones juradas, contestaciones a interrogatorios, admisiones ofrecidas, entre otros, que no existe controversia real sustancial sobre un hecho esencial y pertinente, y siempre que el derecho aplicable así lo justifique. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601, 610-611 (2023). De manera que, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra.

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas

u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023). Véase, además, la Regla 36.3 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. Si el promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015). Además, el promovente de una solicitud de sentencia sumaria ha de acompañar su petitorio con prueba de la cual surja preponderantemente la ausencia de controversias sobre los hechos medulares del caso. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company,* 2023 TSPR 120, resuelto el 3 de octubre de 2023. Es un hecho medular el que puede afectar el resultado de la reclamación, conforme al derecho sustantivo aplicable. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra.

Cabe destacar que, la parte que desafía una moción de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. *Íd.*; *León Torres v. Rivera Lebrón,* supra, pág. 43. Por el contrario, la Regla 36.3(c) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c), obliga a quien se opone a que se declare con lugar esta solicitud a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *León Torres v. Rivera Lebrón,* supra. A esos efectos, deberá sustentar con evidencia sustancial los hechos materiales que

entiende están en disputa. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra.

Por ello, en la oposición a una solicitud de sentencia sumaria, el promovido debe detallar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos, deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.*

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por el promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.,* pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz Cruz y otra v. Casa Bella Corp. y otros,* supra. Además, existen casos que no se deben resolver mediante sentencia

sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.*

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. En particular, nuestro más Alto Foro señaló que:

> [...] el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, los foros apelativos nos encontramos en la misma posición que el Tribunal de Primera Instancia y utilizamos los mismos criterios para evaluar la procedencia de una sentencia sumaria. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra. Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa. *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de*

*novo* si el foro primario aplicó correctamente el derecho. *Acevedo y otros v. Depto Hacienda y otros,* 212 DPR 335, 352 (2023).

En lo atinente al caso de marras, en virtud de la Regla 10.2 (5) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 (5), una parte demandada puede fundamentar su petitorio de desestimación mediante la defensa de que la causa de acción en su contra deja de exponer una reclamación que justifique la concesión de un remedio. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra. En cuyo caso, la pretendida desestimación va dirigida a los méritos de la controversia, no así a los aspectos procesales. *Íd.* Además, obliga a los tribunales a dar por ciertos todos los hechos bien alegados en la demanda, los cuales deberá interpretar de forma conjunta, liberal y de la manera más favorable para la parte demandante. *Íd.*

**C. Código de Seguros y las cláusulas de exclusión**

En Puerto Rico, el negocio de seguros está investido de un alto interés público debido al papel que juega en la protección de los riesgos que amenazan la vida o el patrimonio de los ciudadanos. *Carrasquillo Pérez et al. v. Asociación y/o Consejo de Titulares del Condominio Parque 352 et al.,* 2024 TSPR 101, resuelto el 16 de septiembre de 2024; *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company,* supra. La legislación especial que rige la industria de seguros es la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el Código de Seguros de Puerto Rico, 26 LPRA sec. 101, *et seq. Carrasquillo Pérez et al. v. Asociación y/o Consejo de Titulares del Condominio Parque 352 et al.,* supra; *Barreto Nieves y otros v. East Coast Water Sports, LLC y otra,* 2024 TSPR 40, resuelto el 22 de abril de 2024.

Como se sabe, el seguro constituye un acuerdo mediante el cual, a cambio del cobro de una prima o cuota periódica, el

asegurador asume determinados riesgos y se compromete a proveer un beneficio específico o determinable, de ocurrir algún evento especificado en el acuerdo. *Íd.* Los términos del contrato de seguro están contenidos en una póliza y constituyen la ley entre las partes. 26 LPRA sec. 1114(l); *Carrasquillo Pérez et al. v. Asociación y/o Consejo de Titulares del Condominio Parque 352 et al.,* supra. Ninguna enmienda o cambio al contrato de seguros será válido a menos que se haga por escrito y que forme parte de la póliza. Artículo 11.180 del Código de Seguros, *supra*, sec. 1118.

Por constituir este un contrato de adhesión, sus disposiciones han de interpretarse liberalmente a favor del asegurado. *Barreto Nieves y otros v. East Coast Water Sports, LLC y otra,* supra. Ahora bien, si los términos del contrato de seguro son claros, específicos, ausentes de ambigüedad y no dan lugar a distintas interpretaciones, las partes quedan obligadas por su cumplimiento. *Íd.* Al realizar un ejercicio hermenéutico sobre el alcance de lo acordado, los contratos de seguro se deberán interpretar globalmente, considerando la totalidad de los términos y condiciones expuestos en la póliza. *Íd.* En cuyo caso, las normas de interpretación general contractual del Código Civil de Puerto Rico solo aplicarán de forma supletoria. *Íd.*

Como se sabe, las compañías aseguradoras pueden incluir en sus contratos de póliza unas cláusulas de exclusión cuyo fin es limitar la cubierta y establecer que el asegurador no responderá por ciertos eventos, riesgos o peligros. *Carrasquillo Pérez et al. v. Asociación y/o Consejo de Titulares del Condominio Parque 352 et al.,* supra; *Barreto Nieves y otros v. East Coast Water Sports, LLC y otra,* supra. Es por ello, que, las exclusiones se han de interpretar restrictivamente a favor del asegurado, para así proteger a la persona asegurada. *Íd.* En la medida en que el objetivo principal de un seguro es brindar protección al asegurado, las cláusulas de

exclusión son desfavorecidas y deben interpretarse restrictivamente en contra del asegurador. *Íd.* Ahora bien, si estas son claras y aplican a determinada situación, no deberá responsabilizarse a la aseguradora por riesgos expresamente excluidos. *Íd.*

### D. Ley Núm. 45

La Ley Núm. 45, *supra,* se creó para garantizar al obrero su compensación en contra de los riesgos a su salud relacionados con su trabajo. *Carrasquillo Pérez et al. v. Asociación y/o Consejo de Titulares del Condominio Parque 352 et al.,* supra. A esos fines, la Ley Núm. 45, *supra,* exige que los patronos realicen una aportación patronal para compensar a los obreros y empleados por sus lesiones, incapacidad productiva o muerte como resultado de un accidente o enfermedad ocupacional. *Arzuaga et als. v. Empresas Brunet et al.,* 211 DPR 803, 810 (2023). Sobre este tema, el Tribunal Supremo expresó:

> A cambio de esta aportación patronal, la ley ofrece al obrero lesionado una compensación segura, inmediata y cierta en comparación a una reclamación ordinaria en daños, mientras que reconoce la inmunidad del patrono asegurado contra acciones por daños y perjuicios de sus empleados. Además, la CFSE asume los gastos de tratamiento médico y compensación sin derecho a reembolso, independientemente de quien fue la negligencia. (Nota y cita omitida.) *Íd.,* págs. 810-811.

Los requisitos para que un accidente sea compensable bajo la Ley de Compensaciones son: (1) que provenga de cualquier acto o función del obrero; (2) que sea inherente a su trabajo o empleo, y (3) que ocurra en el curso de este. *Odriozola v. S. Cosmetic Dist. Corp.,* 116 DPR 485, 501 (1985).

Con respecto a la obligatoriedad de proveer un seguro compulsorio a sus obreros o empleados, el Artículo 16 de la Ley Núm. 45, 11 LPRA sec. 19, decreta que:

> [t]odo patrono de los comprendidos dentro de las disposiciones de esta Ley estará obligado a asegurar a sus obreros o empleados en la Corporación del Fondo del Seguro del Estado la compensación que éstos deban recibir por lesiones, enfermedad o muerte [...].

En cuanto a la penalidad aplicable, el Artículo 15 de la Ley Núm. 45, 11 LPRA sec. 18, tipifica como delito menos grave que un patrono no pague la compensación que provee el citado Artículo 16, *supra,* lo cual conllevará una sanción con pena de reclusión no mayor de seis (6) meses o una multa que no excederá los cinco mil dólares ($5,000.00), o ambas penas, a discreción del tribunal.

**III.**

En su recurso, la peticionaria señala como único error que el foro primario incidió al negarse a desestimar sumariamente la causa de acción en su contra y dictaminar que existe controversia en cuanto a si la póliza PPK1556471 excluye de cubierta la reclamación objeto de la presente causa de acción.

De otra parte, en su alegato en oposición, la señora Negroni Hernández cuestiona la aplicabilidad de la cláusula de exclusión de la póliza de Universal sustentado en que, la señora Encarnación Colón era inelegible a solicitar los beneficios bajo la Ley Núm. 45, *supra,* ante la inexistencia de una póliza con la CFSE. Sostiene que tampoco aplica la referida exclusión dado que la señora Encarnación Colón trabajaba como contratista independiente al momento del accidente objeto de esta demanda. Argumenta por último que, a su entender, la referida cláusula es vaga y ambigua.

Por último, la señora Encarnación Colón se opone a la expedición del auto por entender que existe una controversia de hechos que impide disponer de este asunto por la vía sumaria.

Tal cual expusimos previamente, al evaluar el dictamen del foro primario, en virtud del deber que nos impone *Meléndez González et al. v. M. Cuebas*, supra, revisamos *de novo* el petitorio sumario junto a los anejos que lo acompañan, así como, los respectivos escritos en oposición de las demás partes. Lo antes, con el fin de dilucidar si el TPI incidió al identificar una controversia de

hechos que le impedía dictar sentencia sumaria parcial a favor de Universal.

Es norma reiterada que, al revisar una solicitud de sentencia sumaria, los foros apelativos nos encontramos en igual posición que el foro sentenciador. De manera que, nos corresponde primeramente evaluar si las partes dieron cumplimiento a los requisitos de forma que establece la Regla 36 de las Reglas de Procedimiento Civil, *supra.* Concluido el análisis de rigor, constatamos que las partes cumplieron con las formalidades que disponen nuestras reglas procesales.

Procedemos, pues, a examinar *de novo* los méritos del petitorio sumario, producto de lo cual, identificamos que el TPI incidió al identificar que existe controversia en cuanto a si la póliza excluye de cubierta los daños reclamados por lo que procede justipreciar la aplicación del derecho a los hechos consignados por el foro primario. Nos explicamos.

El primer hecho incontrovertido que formuló el foro primario establece que, la señora Encarnación Colón sufrió una caída mientras pintaba una pared en el hogar de la señora Negroni Hernández. Se colige del segundo hecho incontrovertido que, la señora Encarnación Colón realizaba labores de limpieza en la residencia de la señora Negroni Hernández, una vez en la semana, durante un año y medio. En consideración a lo anterior, y debido a que la naturaleza de la relación laboral es un factor determinante, procedemos a evaluar si la señora Encarnación Colón era empleada o contratista independiente de la señora Negroni Hernández al momento en que se suscitó el accidente objeto de esta reclamación.

El Artículo 36 de la Ley Núm. 45, 11 LPRA sec. 39, define "obrero" o "empleado" como "toda persona al servicio de cualquier individuo, sociedad o corporación que emplee regularmente obreros comprendidos bajo las disposiciones de esta Ley, incluyendo al

dueño de un negocio o industria individual que trabaje a tiempo completo en dicho negocio o industria y cuyo ingreso bruto de tal negocio o industria no exceda un millón (1,000,000) de dólares anuales". De igual manera, el Artículo 36, *supra,* expone que los referidos términos incluyen "todo trabajador que se emplee en cualquier establecimiento u ocupación fabril, comercial o agrícola por una persona natural o jurídica por alguna compensación, y por el Gobierno del Estado Libre Asociado, o cualquiera de sus dependencias, de acuerdo con los fines de esta Ley."

En *Romero et als. v. Cabrer Roig et als.,* 191 DPR 643, 658-659 (2014), nuestro más Alto Foro definió el término "empleado" como la persona "que rinde servicios a un patrono y a cambio recibe de éste un sueldo, salario, jornal, comisión, bono, adehala o cualquier otra forma de compensación".[13] En cuanto a la definición de empleado doméstico, allí también nuestro más Alto Foro estableció que, es aquel que atiende las necesidades del jefe de familia o de la familia en términos generales, término que abarca las funciones de cocinero, camarero, mayordomo, sirviente, ama de llave, entre otros. *Romero et als. v. Cabrer Roig et als.,* supra, pág. 654. De otra parte, expuso que es contratista independiente "aquella persona que 'dada la naturaleza de su función y la forma en que presta servicios resulta ser su propio patrono'." *Íd.*, pág. 659.

Puntualizamos que, en *Romero et als. v. Cabrer Roig et als.,* supra, pág. 660, el Tribunal Supremo reiteró los criterios que facilitan la distinción entre un empleado y un contratista independiente *bona fide,* a saber:

> (1) Naturaleza, extensión y grado de control que ejerce el patrono sobre la persona en la ejecución de la obra o trabajo;

---

[13] Citando la Guía Revisada de la Ley Núm. 80 de 30 de mayo de 1976, enmendada, Departamento del Trabajo y Recursos Humanos, rev. 30 de junio de 2014, pág. 75. Cabe señalar que la citada definición fue en el contexto de una controversia sobre si unas personas que prestaban servicios domésticos en la residencia de un particular se podían acoger a los beneficios de la Ley Núm. 80 de 30 de mayo de 1976, conocida como la Ley sobre Despidos Injustificados, 29 LPRA secs. 185a *et seq.*

(2) Grado de juicio o iniciativa que despliega la persona;
(3) Forma de compensación;
(4) Facultad de emplear y derecho de despedir obreros;
(5) Oportunidad de incurrir en ganancias y el riesgo de pérdidas;
(6) La titularidad del equipo y de las instalaciones físicas provistas por el principal;
(7) Retención de contribuciones;
(8) Si, como cuestión de realidad económica, la persona que presta el servicio depende de la empresa para la cual trabaja;
(9) Permanencia de la relación de trabajo, y
(10) Si los servicios prestados son una parte integral del negocio del principal o se pueden considerar como un negocio separado o independiente por sí mismos.

Sobre el particular, el Tribunal Supremo dictaminó que, el análisis multifactorial dirigido a precisar la naturaleza de la relación laboral conlleva que se ponderen sosegadamente la totalidad de las circunstancias. *Íd.* Entiéndase que, es insuficiente que se cumpla uno o todos los criterios enumerados debido a que dependerá de la importancia atribuible a cada uno de esos factores. *Íd.*

Por su parte, el *Manual de Clasificaciones de Oficios e Industrias y Tipos de Seguros* de la CFSE, edición de 1 de julio de 2022 al 30 de junio de 2023,[14] define empleados domésticos y amas de llave como:

> [t]odos los **empleados del asegurado que realizan labores domésticas y de mantenimiento en residencias privadas**. Incluye empleados tales como cocineras, empleadas domésticas, acompañantes, niñeras, enfermeros, jardineros, amas de llave, planchadoras y contratistas que prestan servicios domésticos dentro de la residencia del cliente; choferes y sus ayudantes. **Se contemplan labores sencillas y ordinarias de mantenimiento o reparaciones cuando sean realizadas por los mismos empleados.** Incluye la atención y cuido a personas enfermas o incapacitadas en cuyo caso las labores que realiza la persona no son especializadas. Estas son de naturaleza simple como el acompañar a la persona, ayudar en el cuido personal y combinar el cuido con ciertas labores domésticas. Mantenimiento o reparaciones ordinarias a edificios por empleados contratados solamente para ese propósito deben ser asignados a la clave 9015. Reparaciones extraordinarias, alteraciones, nuevas construcciones, erecciones o demoliciones de estructuras deben ser asignadas a la clasificación de construcción correspondiente mediante la formalización de una póliza eventual. (Énfasis nuestro.)

---

[14] Vigente a la fecha del accidente objeto de este litigio.

Mientras que, contratista independiente, según lo define la CFSE en su *Glosario de Términos Edición 2024-2025,* publicado y revisado el 14 de agosto de 2024, es aquella "[p]ersona natural, individuo, corporación u otra entidad jurídica que es contratada por un patrono para hacer un trabajo total o parcialmente." Análogamente, el Tribunal Supremo expuso que, es contratista independiente aquella persona que contrate un trabajo y emplee obreros para realizarlo. *Bustelo v. Comisión Industrial,* 85 DPR 582, 591 (1962). De manera que, si quien contrata no persigue con ello un fin de lucro, no estamos ante un contratista independiente sino ante un empleado. *Íd.*

Añádase a lo anterior que, el Tribunal Supremo resolvió que queda excluido de los beneficios de la Ley Núm. 45, *supra,* el obrero cuyo empleo sea casual y, también, que no esté en el curso de o para el fin del negocio o de la industria del patrono. *Bustelo v. Comisión Industrial,* supra. A esos efectos dispuso que, es trabajo casual "aquel no caracterizado por regularidad de acción, o que fuere, por su naturaleza, trabajo imprevisto o de emergencia, y en todos los casos, cuando el mismo es de breve duración y su estipendio es mínimo, y no esté comprendido dentro del negocio, industria, profesión u ocupación del patrono." *Íd.,* pág. 590. De conformidad, nuestro más Alto Foro puntualizó que, si el trabajo se ejecuta de forma periódica no es casual. *Íd.,* pág. 589. Análogamente, el Artículo 36 de la Ley Núm. 45, *supra,* preceptúa que, para dictaminar si un trabajo es accidental o casual es necesario considerar la clase de trabajo que se realiza, el costo que este representa para el patrono, su duración y, principalmente, "su relación con el negocio o industria del patrono del obrero o empleado que sufre el accidente."

Luego de analizar las determinaciones de hechos números 1 y 2 que surgen del dictamen recurrido, a la luz de las definiciones

antes esbozadas, es forzoso concluir que la señora Encarnación Colón era empleada de la señora Negroni Hernández y actuaba como tal cuando se accidentó. Como vimos, la señora Encarnación Colón rendía labores de limpieza de forma periódica (una vez por semana) para la señora Negroni Hernández y de carácter no casual (por espacio de año y medio). Surge del expediente que, la labor de mantenimiento que la señora Encarnación Colón estaba realizando cuando se accidentó era "pintar un espacio pequeño en una pared de la habitación de [la señora Negroni Hernández] donde habían removido una consola de aire acondicionado [...] Lo único que había que pintar era ese espacio reducido en la pared [...] La Sra. Negroni ni tan siquiera le dio instrucciones a la Sra. Encarnación sobre cómo hacer el trabajo, ya que era una tarea extremadamente sencilla."[15]

Según previamente expuesto, el *Manual de Clasificaciones de Oficios e Industrias y Tipos de Seguros* de la CFSE define empleado doméstico como aquellos que ejercen labores domésticas y de mantenimiento en residencias privadas. Además, expresamente establece que, el referido término contempla labores sencillas y ordinarias de mantenimiento o reparaciones cuando son realizadas por los mismos empleados. Sobre tales bases colegimos que, las tareas que realizaba la señora Encarnación Colón cuando se accidentó cualifican como labores sencillas de mantenimiento, a tenor del *Manual de Clasificaciones de Oficios e Industrias y Tipos de Seguros* de la CFSE.

A lo anterior se añade que, surge de la alegación número 10 de la *Demanda* que la propia señora Encarnación Colón se identificó como empleada doméstica de la señora Negroni Hernández. A esos efectos expuso que "[e]l pasado 2 de septiembre de 2022, AILEEN se encontraba trabajando como empleada doméstica en la residencia

---

[15] Apéndice, pág. 52. Véase, además, Apéndice, págs. 64, 67, 72.

de LORENA localizada [...]"[16] Por todo lo antes concluimos que, la señora Encarnación Colón laboraba como empleada doméstica de la señora Negroni Hernández al momento de accidentarse. Añádase que, el TPI se limitó a identificar una sola controversia que realmente versa sobre una conclusión de derecho. De manera que, como foro revisor nos encontramos ante un asunto de estricto Derecho.

Según la señora Negroni Hernández, la cláusula de exclusión que invoca Universal en su petitorio de desestimación es ambigua. En atención a lo anterior, transcribimos, a modo de referencia, la cláusula de exclusión que tuvo ante su consideración la Corte Federal para el Distrito de Montana, en *Royal Indemnity Co. v. Colmore*, No. CV 05-122-blg-CSO, 2007 WL 9710078 (D. Mont. Aug. 14, 2007), debido a su similitud con la cláusula del caso de marras:

> *The coverages provided by this policy do not apply to:*
> *[...]*
> *17. "Bodily injury" or "personal injury" to any person eligible to receive any benefits provided by or required to be provided by a "covered person" under any:*
> *a. Workers compensation;*
> *[...]*
> *or any other similar law.* (Énfasis omitido.)

Al adjudicar el planteamiento de ambigüedad, el referido foro federal dictaminó:

> [t]he clear and unambiguous language of this policy exclusion applies to the occurrence at issue. Rupert Colmore was "a 'covered person' " under the policy. The Montana Worker's Compensation Court and the Montana Supreme Court determined that Mr. Forgey was a person eligible to receive benefits required to be provided by Mr. Colmore under Montana's workers' compensation law. Also, it is undisputed that Mr. Forgey suffered "bodily injury" as defined in the Royal policy. Accordingly, this policy exclusion precludes coverage. (Énfasis omitido.)

Tras evaluar la cláusula de exclusión objeto de este recurso, resolvemos que no adolece de ambigüedad. Surge claramente de la cláusula de exclusión aplicable a la presente causa que, la póliza

---

[16] Apéndice, pág. 3.

excluye de cubierta aquellas lesiones corporales que sufra una persona a quien al asegurado le sea requerido proveer ("required to be provided") los beneficios de la CFSE. Como vimos, la obligación de la señora Negroni Hernández de proveer a su empleada, la señora Encarnación Colón, una póliza con la CFSE emana del Artículo 16 de la Ley Núm. 45, *supra.* Ante una cláusula de exclusión clara y libre de ambigüedad, no procede responsabilizar a Universal por riesgos que expresamente excluyó de cubierta. *Carrasquillo Pérez et al. v. Asociación y/o Consejo de Titulares del Condominio Parque 352 et al.,* supra.

Derrotado el argumento de ambigüedad aclaramos que, las cláusulas de exclusión, como la que hoy adjudicamos, son válidas en ausencia de una ley en contrario. *Couch on Insurance* 3d, § 115:12.

Por los fundamentos antes expuestos, concluimos que, la póliza "Unipack Personal" Núm. PPK1556471 excluye de cubierta los daños que reclamó la señora Encarnación Colón y que son objeto del pleito de epígrafe. A esos efectos, dictaminamos que, el foro primario incidió al negarse a desestimar sumariamente, la *Demanda* y la *Demanda contra Coparte,* instadas en contra de Universal. El error señalado se cometió.

Al amparo de la normativa antes discutida y a tenor de las facultades que nos confiere la Regla 40 de nuestro Reglamento, *supra,* procede intervenir con el dictamen recurrido en esta etapa de los procesos. De conformidad, expedimos el auto de *certiorari,* revocamos la *Resolución* recurrida, ordenamos la desestimación de la causa instada en contra de Universal y devolvemos el presente asunto ante el foro primario para la continuación de los procesos.

**IV.**

Por las razones que anteceden, expedimos el auto de *certiorari* y revocamos el dictamen apelado. En su consecuencia, ordenamos

la desestimación de la *Demanda* y de la *Demanda contra Coparte* en contra de Universal. Devolvemos el asunto ante el foro primario para la continuación de los procesos de conformidad con lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones